Isidor Pechner, Respondent, *v.* The Phœnix Insurance Company, · Appellant.

The rights of parties under the provisions of the act of congress of 1789 (1 U. S. Stat. at Large, 79, § 12), providing for the removal of causes from a State court into the Circuit Court of the United States, are governed by the facts existing at the time the action was commenced. It must appear by the petition that at that time plaintiff was a citizen of the State in which the action is brought, and defendant, a citizen of another State. A petition simply stating that either party "*is* a citizen" is insufficient, as that relates only to the time of the drawing of the petition, and no legal presumption arises therefrom that he was a citizen at the commencement of the action.

Where the statement is as to the citizenship of the plaintiff, it is not aided by the fact that in the verification to the complaint plaintiff is described as of a county in this State. If the complaint can be read with the peti-

Statement of case.

tion, an averment of residence is not equivalent to an averment of citizenship, and is insufficient.

A provision in a policy of fire insurance, that any other insurance thereafter made without the consent of the insurer written upon the policy will render it void, may be waived by mutual consent, which may be proved by oral evidence.

The rule prohibiting the reception of oral evidence to vary or modify a written contract has no application where the validity or existence of he contract itself is concerned.

A general agent of a stock fire insurance corporation, located in a place distant from the home office of the company, and having power to issue policies and to write consents thereon, has power to bind the company by a parol waiver of such a condition.

*It seems*, that a condition in a written instrument not under seal, requiring an act to be performed or evidenced by a statement in writing, may be waived by parol, and that a parol waiver of a similar condition in a sealed instrument may be upheld in equity on the theory of an equitable estoppel.

*Carpenter* v. *Washington Insurance Company* (16 Peters, 495) considered as overruled.

Defendant, through its general agent, P., issued to S. a policy of insurance upon a stock of goods. The policy contained a clause declaring it void in case of subsequent insurance without defendant's consent written upon the policy. S. subsequently procured other insurance upon the same property without such consent. Plaintiff purchased the goods of S., and both at the time went to the office of P. and exhibited all the policies. The partner of P. examined them and wrote a consent to a transfer on defendant's policy, stating that was all that plaintiff wanted. Afterwards plaintiff surrendered the other policies and took out new ones for the same amount. Subsequently, upon removal to another store, plaintiff, upon getting consent to the removal, exhibited to P.'s partner the new policies, and asked if they were all right, and was advised that they were. In an action upon the policy, *held*, that defendant was estopped from claiming a forfeiture of its policy.

(Argued January 7, 1875; decided May term, 1875.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department in favor of plaintiff, entered upon an order denying a motion for a new trial, and directing judgment upon a verdict. (Reported below, 6 Lans., 411.)

This action was brought upon a policy of insurance, issued to W. Straus & Co., on a stock of goods and merchandise at Elmira, and assigned by them, with the defendant's consent,

to the plaintiff, who was the owner of such goods when the loss occurred.

The defendant is a corporation created and doing business under the laws of the State of Connecticut, but having an office and transacting business at Elmira.

The original complaint in the action was verified by the plaintiff May 21, 1867, and served June first. The verification was made in Chemung county, and the caption thereof was, "Chemung county, ss. ;" and it stated that the plaintiff was "of said county." An amended complaint was verified June 5, 1869.

In June, 1867, the defendant filed a petition with the court praying for a removal of the cause from the Supreme Court to the Circuit Court of the United States. In this petition it was stated that the "petitioner is a citizen of the State of Connecticut, and that Pechner, the plaintiff, is, as the petitioner is informed and believes, a citizen of the State of New York." The petition was accompanied with the usual bond and approval. The petition was denied, and the order thereon was affirmed at General Term. The defendant answered the amended complaint June 21, 1869, setting up that there was a clause in its policy providing that if the assured should have, or should thereafter make, any other insurance on the property thereby insured, or any part thereof, without the consent of the defendant written thereon, the policy should be void. It was then averred that, notwithstanding the said provision, and in violation thereof, the insured, after the issuing of the policy, procured other insurance in designated companies to the amount of $5,500, without notice to the defendant, and without its consent being written on the policy, except that by an indorsement thereof it had consented to other insurance to the amount of $2,000, and no more.

At the trial, the plaintiff offered evidence, under exception, which it was claimed tended to prove a waiver of the condition, above set forth, concerning other insurance. The facts bearing upon this point and other facts are sufficiently stated in the opinion.

Exceptions were ordered to be heard at first instance at General Term.

*James Breck Perkins* for the appellant. The motion for a nonsuit should have been granted on the ground of other insurance. (*Carpenter* v. *Prov. W. Ins. Co.*, 16 Pet., 495, 510–512; *Lammat* v. *H. R. F. Ins. Co.*, 17 N. Y., 199; *Barrett* v. *Un. Mut. F. Ins. Co.*, 7 Cush., 175; *Forbes* v. *Agawam Ins. Co.*, 9 id., 470; *Worcester Bk.* v. *Hartf. F. Ins. Co.*, 11 id., 265; *Pendar* v. *Am. Ins. Co.*, 12 id., 469; *Hale* v. *Mech. Ins. Co.*, 6 Gray, 169; *Gilbert* v. *Phœnix Ins. Co.*, 36 Barb., 372; *Carroll* v. *Charter Oak Ins. Co.*, 38 id., 402; *Brown* v. *Catt. Ins. Co.*, 17 N. Y., 389, 390; *N. Y. Ins. Co.* v. *Nat. Ins. Co.*, 20 Barb., 468; *Ripley* v. *Ætna Ins. Co.*, 29 id., 552.) Defendant was entitled to notice of the last three policies, and its consent to them was necessary. (*Burt* v. *People's F. Ins. Co.*, 2 Gray, 397; *Conway Tool Co.* v. *H. R. Ins. Co.*, 12 Cush., 144; *Hutchinson* v. *West. Ins. Co.*, 21 Mo., 97; *Benjamin* v. *Sar. Co. Ins. Co.*, 17 N. Y., 415.)

*S. B. Tomlinson* for the respondent. The Supreme Court could not entertain the motion to proceed no further in the case. (*Livermore* v. *Jenks*, 11 How. Pr., 479; *Stevens* v. *Phœnix. Ins. Co.*, 41 N. Y., 149; *Gordon* v. *Langest*, 16 Pet., 97; *Taylor* v. *Shaw*, 9 Alb. L. J., 242; *Holden* v. *Put. F, Ins. Co.*, 46 N. Y., 1; *Fargo* v. *Mc Vicker*, 38 How. Pr., 1.) Defendant by its voluntary appearance and answer and litigation in the State court gave the court jurisdiction, and waived its right to question such jurisdiction. (2 Den., 197; 38 How., 4; 12 id., 171; 5 Duer, 605; *Kanouse* v. *Martin*, 15 How. [U. S.], 198, 208–210; *Mahaney* v. *Peuman*, 4 Duer, 603; 4 Bosw., 558; 2 Robt., 667; 5 Sandf., 442; 2 Duer, 605; *Conner* v. *Galena R. R. Co.*, 17 Wis., 477; *McCormick* v. *Penn. Cent. R. R. Co.*, 49 N. Y., 303; *Stevens* v. *Phœnix Ins. Co.*, 41 id., 149.) Before the State court could lose jurisdiction, it was necessary that it should appear and be proven to the satisfaction of the court that the suit was commenced

by a citizen of the State in which it was brought against a citizen of another State. (*Holden* v. *Put. F. Ins. Co.*, 46 N. Y., 1; 34 Ill., 356; *Clark* v. *Matherson*, 12 Pet., 164; *Morgan* v. *Morgan*, 12 Wheat., 290; *Mollan* v. *Severence*, 7 id., 537; *Field* v. *Blair*, 1 Code [N. S.], 292, 361.) Defendant was bound to enter its appearance in the State court at the time of filing the petition. (*Keville* v. *Phœnix Ins. Co.*, 10 Alb. L. J., 14; *Suydam* v. *Smith*, 1 Den., 263; *Durand* v. *Hollins*, 3 Duer, 686.) The condition of the policy requiring that the consent to other insurance should be in writing could be waived by parol. (*Whitwell* v. *Put. F. Ins. Co.*, 5 Alb. L. J., 107; *Owen* v. *F. J. S. Ins. Co.*, 57 Barb., 518; *Carroll* v. *C. O. Ins. Co.*, 40 id., 292; *Shearman* v. *N. F. Ins. Co.*, 46 id., 526; *Greenfield* v. *Mass. Mut. L. Ins. Co.*, 47 id., 430; *Ames* v. *N. Y. Un. Ins. Co.*, 14 id., 253; *Liddle* v. *Market Ins. Co.*, 29 id., 184; *Benedict* v. *Ocean Ins. Co.*, 31 id., 389; *Boehen* v. *Williamsburgh Ins. Co.*, 35 id., 131.) This condition was waived and defendant was estopped from claiming a forfeiture of its policy. (*Frost* v. *Sar. Mut. Ins. Co.*, 5 Den., 154; *Viall* v. *Gen. Mut. Ins. Co.*, 19 Barb., 40; 1 N. Y. Ct. App. Dec., 316; 6 Lans., 411; *Pierrepont* v. *Barnard*, 2 Seld., 279; *Owen* v. *J. S. Ins. Co.*, 57 N. Y., 518; *Ripley* v. *Ætna Ins. Co.*, 29 Barb., 552; *Bumpstead* v. *Div. Mut. Ins. Co.*, 2 Kern., 81; *Benedict* v. *Ocean Ins. Co.*, 31 N. Y., 389; *Benjamin* v. *Sar. Co. Ins. Co.*, 17 id., 420.)

DWIGHT, C. The petition for the removal of this cause to the United States Court was properly denied.

It simply alleged that when the petition was filed (June 13, 1867) the defendant *is* a citizen of Connecticut, and the plaintiff (as the defendant is informed and believes) *is* a citizen of the State of New York. It is not asserted that at the time of the commencement of the action the parties were citizens of the respective States named. Such a statement is fatally defective. (*Holden* v. *Putnam Fire Ins. Co.*, 46 N. Y., 1.) In that case, the only proof of the citizenship of the plaintiff, made upon the application for removal, was found in the

petition of the defendant, made and verified April 5, 1867, and which recited that the action was commenced March 25, 1867.  After stating the nature of the action, and that the defendant is a citizen of Connecticut, it proceeded as follows : " Delos L. Holden, the plaintiff in said action, is a citizen of the State of New York."  The Court of Appeals said that this was simply an averment that when the petition was drawn the plaintiff was a citizen of this State, but that no legal presumption arose from that fact that he was a citizen at the time of the commencement of the action.  The rights of the parties under the law of congress providing for removal of causes into the federal courts are governed by the facts existing when the action was commenced, and a subsequent change of residence or citizenship does not confer or defeat a right to proceed under it.  (*Clarke* v. *Mathewson*, 12 Peters, 164 ; *Mollan* v. *Torrance*, 9 Wheat., 537.)  Accordingly, in the present case, as far as the statements in the petition are concerned, the court below properly denied the application for removal.  (*People* v. *Chicago*, 34 Ill., 356 ; *Savings Bk.* v. *Benton*, 2 Metc. [Ky.], 242.)

The defendant, however, claims that this case is taken out of the operation of the rule in *Holden* v. *The Putnam Fire Insurance Company*, by the fact that there was in the verification of the plaintiff's original complaint the caption " Chemung county," and that the plaintiff stated that he was " of said county."  His argument is, that the petition and complaint are to be read together, and if so, that the words " of said county " are equivalent to an assertion of residence at the time of the commencement of the action, and that residence is *prima facie* evidence of citizenship.

This argument cannot be sustained.  It is not necessary to inquire whether, under the circumstances, the allegations in the petition can be connected, in the way suggested, with the complaint.  There was no evidence that the complaint was before the court, or that it was even on file.  Assuming, for the sake of the argument, that its statements and verification could be read with the petition, it cannot fairly be claimed

that the words " Chemung county, *ss.*, Isidor Pechner of said county " are a sufficient allegation of the *citizenship* of Pechner to oust the jurisdiction of the State court. It is clear, beyond dispute, that the State court had jurisdiction over the parties and the subject-matter until the terms of the twelfth section of the United States judiciary act of 1789 were complied with. This jurisdiction is not to be subverted until clear proof is made that the act of congress has been complied with. This is all the more so, since it has been determined that if the proper proof is made, the further proceedings before the State court are *coram non judice*, wholly without jurisdiction and void. (*Stevens* v. *Phœnix Ins. Co.*, 41 N. Y., 149.)

The words on which the defendant relies are perfectly consistent with the fact that the plaintiff was, when he made his verification, a resident alien, has since become naturalized, and at the time of filing the petition was a citizen. It is expressly held in *Parker* v. *Overman* (18 How. [U. S.], 137) that an averment of *residence* in the petition is not enough. There must be an allegation that the party was a citizen when the action was brought. If the statement on which the defendant relies had been incorporated in the petition itself, to the effect " that when the complaint was filed the plaintiff was of Chemung county, and that he is (now) a citizen of the State," etc., it would have been plainly insufficient on the rulings in the cases of *Holden* v. *Putnam Fire Insurance Company* and *Parker* v. *Overman*. Of course, it does not improve his case that the one statement was in the petition and the other in the verification of the complaint.

The main question in the cause is, whether the policy is void because there was *other* insurance upon the property without the written consent of the defendant.

The policy provided that if the insured shall have or shall hereafter make any other insurance on the property hereby insured, or any part thereof, without the consent of the company written herein, * * * then, and in every such case, the policy shall be void.

The appellant, in regard to this clause, asserts two propositions: One is, that its provisions cannot be waived by mutual consent, proved by oral evidence. The other is, that there was, in any event, no valid waiver in this case.

It appeared on the trial that the policy in question was issued at Elmira by Thomas Perry, agent for the defendant. It was in force from the 31st day of March, 1866, to the same date in 1867, and was issued to Henry D. Straus upon a stock of goods in that city. Pechner, the plaintiff, bought the goods of Straus, who had three other policies upon them, issued by one Ayres, amounting in the aggregate to $5,500. When the sale to Pechner took place the plaintiff and Straus called at the office of Perry and stated the terms of the transaction. Scott, Perry's partner, looked at all the policies and wrote a consent to the transfer on that of the defendant, saying to the plaintiff, "you are all right, this is all you want." Afterwards, and while the policy of the defendant was in force, the plaintiff surrendered the policies issued by Ayres and took out three new policies in other companies. The amount of insurance was the same. In April the plaintiff removed to another store. He thereupon saw Scott and got his consent in writing to the removal. At the same time he exhibited to him the new policies, and Scott had them in his hands and opened them. The plaintiff then asked Scott if these insurances were good and all right, and Scott having opened and looked them over said they were all right. The renewal of the defendant's policy took place in March, and the facts just detailed occurred thereafter. Scott denied that he ever knew that the plaintiff had other insurance to the amount of $5,500, or that he was ever asked to consent to that amount or did consent to it. He however said that he had consented to $2,000 other insurance, and that when Straus and the plaintiff called on him to get consent to the assignment they had papers in an envelope and handed him the package which was said to contain policies written by Ayres, and that he took out one policy and gave consent to the assignment. It was proved by Scott's testimony that he had been an agent for the defendant

for about nine years and was such at the time, and that he had been doing a large business for the company, had issued hundreds of policies and renewals, and had been notified of hundreds of cases where there was other insurance   *   *   * and that such things as consents to transfers and renewals of policies are of frequent occurrence in his business.

Under this testimony the judge declined to direct the jury to find a verdict for the defendant, and charged the jury that if Scott saw the policies and knew the meaning of them and said "it was all right" the plaintiff can recover under this instruction.   The jury found a verdict for the plaintiff.

The defendant, in claiming that this ruling was erroneous, insists that all this evidence was, in point of law, immaterial. It could have, in his view, no influence on the contract since it was parol evidence; and as that cannot be resorted to for the purpose of varying a written instrument it could not be applied to show a waiver of the condition in question.

This claim is, however, a misapplication of that rule, which is a cardinal one in construction and simply designed to ascertain the true meaning and intent of a contract, which all parties concede to be valid.   It has no application where the validity or existence of the contract itself is in question.   It is familiar law that a written instrument may be shown to be void by parol evidence.   It may be thus attacked and overthrown for fraud, illegality, want of consideration or other vice going to the existence of the instrument.   If it can be so attacked it can be sustained in the same manner.   This doctrine applies to the case at bar.   What the defendant says to the plaintiff is substantially this : "Your policy is void, because when you took out insurances with Ayres you did not observe a clause in it which requires the notice of other insurance to be indorsed in writing on the policy."   "True" the plaintiff replies, "but you have, by your conduct, relieved me from complying with that rule and the policy is valid."   The whole contest is upon the validity or invalidity of the contract, and the sole point is, can a condition precedent be waived by the words or acts of the parties?   That is simply an inquiry whether a party can,

by his own acts, be precluded from setting up a condition inconsistent with his acts to the injury of an opposite party whom he has thus misled. The requirement that the consent should be indorsed on the policy is simply a provision that a prescribed act of a formal nature should be done. Suppose that the policy had provided that the consent should be published in the city newspaper, or posted on a bulletin board at a court-house door, could that not be dispensed with by mutual agreement ? Could not the defendant so act as to be estopped from insisting upon it ? How would such a case differ in principle from that existing here ? The provision that an indorsement shall be made on a policy is nothing but a direction that an act shall be done, and falls into the class of ordinary conditions precedent.

The most that the defendant could contend for under any hypothesis is, that the contract provides for a specific mode of proving consent and that this precludes all other modes, even by mutual consent. It is plain that this indorsement could not have been contemporaneous with the execution of the contract. The new policies were not taken out until after it went into operation. The defendant must then contend that if parties when they enter into a contract not required by law to be in writing provide for a particular mode of proving the performance of an act, they cannot, by subsequent acts or arrangements, vary from it. The contract thus becomes an iron bond, binding both parties even against their joint will. Such a conclusion is little less than absurd. An illustration may be found in the law of grants or other dispositions of property. Suppose that a father had given an estate to his daughter, to revert to himself in case she married during her minority without his written consent, and subsequently she married with his oral consent, would that not be a substantial performance of the condition ? In a case, where a father by his will had required the consent of trustees after his death, and had subsequently given his own consent, it was held that the condition was dispensed with. There is also a class of cases in which even trustees who were required to give a con-

sent in writing to a marriage, have been held to do so by an oral consent which had been acted upon. These cases are extremely strong, as it might be plausibly claimed that they could not exceed the authority conferred by the instrument creating the trust. (*Lord Strange* v. *Smith*, Amb., 263; *Worthington* v. *Evans*, 1 Sim. & Stuart, 165; *Pollock* v. *Croft*, 1 Meriv., 181; *Campbell* v. *Netterville*, 2 Ves., Sr., 534.) In *Lord Strange* v. *Smith*, the consent of a mother to a marriage was required to be in writing, and if there were a marriage without that consent, certain estates in land were to be forfeited by the daughter. In other words, the title was to be divested by the non-performance of a condition. Subsequently the mother proposed and encouraged the marriage. After a time she took offence and would not consent. The court held that her conduct was equivalent to a consent, and held that there was no forfeiture. This decision has been frequently approved. It is clearly sustainable on the doctrine of equitable estoppel. In *Worthington* v. *Evans*, a legacy was given on condition of the legatee marrying with the consent, in writing, of the executor. He afterwards married with his approbation, but he did not express his consent in the manner required by the will. It was held, notwithstanding, that the legatee was entitled to the legacy. The court held, inasmuch as the trustee had expressed his approbation and only failed to sign the consent from a reason personal to himself, that the condition was substantially complied with. If these cases are sound, as applied to the act of a trustee having specific powers conferred upon him by a conveyance or a will, how much clearer is the rule where the opposite party to a contract chooses to dispense with a condition introduced into the contract solely for his benefit, and who may have substantial reasons for waiving strict performance. I am aware that there are some cases which have held that a condition in a lease that a lessee shall not assign, etc., without the consent of the landlord in *writing*, is broken by such assignment, notwithstanding a subsequent parol license, given by the landlord. (*Roe* v. *Harrison*, 2 Term. R., 425.) The same rule was applied in *Littler* v. *Holland*

(3 id., 590), to a covenant in written articles of agreement. See, also, *Macher* v. *Foundling Hospital* (1 V. & B., 188). These cases, however, turn upon special doctrines applied by the court to sealed instruments. In both these cases there was a contract under seal, and the decision was rested on that ground. In the last case, the court suggested that there might be a remedy in equity. The court held, in *Roe* v. *Harrison*, that even the breach of such a condition may be waived by a subsequent acceptance of rent by the landlord, with knowledge of the breach. In other terms, while the condition in the sealed instrument could not be dispensed with by mere words, it might be by acts inconsistent with the enforcement of the forfeiture.

This doctrine was affirmed in *Macher* v. *The Foundling Hospital* (1 V. & B., 188 [A. D. 1813]). This was also the case of a lease under seal. There was a condition requiring the previous written consent of the landlord to the use of the premises leased for the purpose of carrying on a trade. The premises having been used for certain trades without written consent, an ejectment was brought to cause a forfeiture. A bill in equity was thereupon filed for an injunction to restrain the prosecution of the action. The court hesitated to say that these acts would constitute a general license to carry on all sorts of trades, but that the good sense was, and the law ought to be, that you must infer from the lessor's conduct that he would have given that sort of license which it would have been prudent to give ; and that the real question was, whether the lessor stood by and permitted expenditure which the lessee incurred on the faith of the lessor's conduct. (Pp. 191, 192.) So in *Richardson* v. *Evans* (3 Maddock, 218 [A. D. 1818]), where there was a similar clause, the court said that though in a lease with a condition requiring written consent a parol license to underlet is not sufficient in equity any more than in law, yet if such parol license is used as a snare, and under circumstances which amount to fraud, the court will grant relief, and added, there is no proof here that the original lessee was induced by the conduct of the original lessor to underlet these premises with-

out a written license, or that the plaintiff, relying upon this parol license, has suffered any injury or inconvenience. The court is here plainly of opinion that the doctrine of equitable estoppel may be applied to licenses of this kind.

As a result of all of the cases and of sound principle, I think it clear that a condition required by a written instrument, not under seal, that an act be performed, or evidenced by a statement in writing, may be waived by parol, and that from necessity the acts going to establish waiver may be shown by parol evidence ; and that while on technical grounds this doctrine has not been extended, in some cases in courts of law, to such clauses in sealed instruments where a mere parol license has been given, yet that even in such a case a parol license may be upheld in equity on the theory of an equitable estoppel.

There is every reason why these doctrines should be applied to insurance policies. The language of the Supreme Court of the United States in *Insurance Company* v. *Wilkinson* (13 Wall. [U. S.], 222) leads to the same general conclusion as is maintained in the present case. " The principle does not admit oral testimony to vary or contradict that which is in writing, but it goes upon the idea that the writing offered in evidence was not the instrument of the party whose name is signed to it ; that it was procured under such circumstances by the other side as estops that side from using it or relying on its contents ; not that it may be contradicted by oral testimony, *but that it may be shown by such testimony that it cannot be lawfully used against the party whose name is signed to it*," or whose contract it may be deemed to be. It is freely admitted that some of the earlier cases are opposed to these views. Thus, in *Carpenter* v. *Washington Insurance Company* (16 Peters, 495) it is held that the requirement of written consent cannot be waived by parol, but that there *must* be an indorsement on the policy. This case, however, and others resembling it, must be deemed to be overruled upon this point. (See the cases collected in May on Ins., §§ 369, 370.) The only further point to be considered in the case at bar is,

whether the facts were sufficient to justify the conclusion that a waiver had taken place.

Scott, with whom the plaintiff dealt, was, by his own showing, the general agent of the defendant. This is proved by the fact that he issued policies and their renewals, received in the regular course of business notice of insurance in other companies, and gave the usual consents. The power of such an agent of a stock company is plenary as to the terms and conditions of the contract, and he may make such memoranda and indorsements modifying the general provisions of the policy, and even inconsistent therewith, as in his discretion may seem proper. (*Gloucester Manufac. Co.* v. *Howard Fire Ins. Co.*, 5 Gray, 498; *Pitney* v. *Glen's Falls Ins. Co.;*\* May on Ins., § 129.) The same rule will be applied to consents to assignments made after the execution of the policy, provided that the agent is intrusted with that branch of business. It is clear in the outset that notice to the agent is notice to the company. Thus, in *Gale* v. *Lewis* (16 L. J. [N. S.], C. L., 119) it was decided that the knowledge by an agent of the assignment of a policy, prior to the declaration of the assignor's bankruptcy, is the knowledge of the company in such a sense as to make the assignment complete under the English law, and prevent the policy from passing to the assignee in bankruptcy. The case was distinguished from that of *Ex parte Hennessy* (2 Dr. & War., 355) because in that the agent, though general, was not, under the special circumstances of the case, authorized to receive notice so as to affect the company. The same general rule must be applied to power to give consents to further insurance, particularly where the company knows, or has reason to know, the practice of the agent, as in the present case, who testified, without contradiction, that he had issued hundreds of them. The general power to receive notice of further insurance, to indorse consents and to issue policies, includes the power to waive strict compliance with the terms of the contract. In other words, what the company itself can do at its home office, can, in general, be done by such an agent, who,

\* Ante p. 6.

in the place where the contract is made, represents the company in respect to it. Any other rule would be inconvenient, and would greatly interfere with dispatch in business. A recent writer expresses the rule, as now understood, in these terms : " The tendency of the court is daily becoming more decided to hold that such an agent may waive any of the conditions of the policy, and bind the company by such waiver : and that his promises and acts, both of omission and commission, representations, statements and assurances, made within the scope of his agency, and after knowledge of a breach of condition, or of the inaccuracy of the statements in the application, if relied on by the insured, who is himself without fault, may be set up by the insured, either on the ground of waiver or of estoppel, in answer to a claim of forfeiture." (May on Ins., § 143.)

The case of *Insurance Company* v. *Wilkinson* (13 Wall. [U. S.], 222) is highly satisfactory upon this point. In that case, the powers of general agents of life insurance companies, acting at a distance from the home office, were much considered. The court said " that the powers of the agent are *prima facie* coextensive with the business intrusted to his care, and will not be narrowed by limitations not communicated to the person with whom he deals. An insurance company establishing a local agency must be held responsible to the parties with whom they transact business for the acts and declarations of the agent within the scope of his employment, as if they proceeded from his principal." (P. 235.)

Had the company itself, at its principal office, treated the plaintiff as Scott did, assuring him that the transaction was right, I think it clear, both upon principal and authority, that it would have been estopped from setting up in its defence that the condition requiring a written indorsement on the policy had not been complied with. The plaintiff must have relied upon such a statement. It is not conceivable otherwise that he would have left matters in the informal condition in which they stood when the loss occurred. Within all the authorities cited, a practical fraud would be perpetrated upon

him if the insurers were then allowed to repudiate the policy. The act of the general agent must be regarded as of like character, and as being of the same effect.

This branch of the subject has been recently fully discussed in this court. (See *Pitney* v. *Glen's Falls Ins. Co., supra.*) It is not necessary again to go over the ground there reviewed. It was there held that if, at the time of issuing the policy, notice of other insurance was given to the general agent of the insurers, and no objection is made, the company will be estopped from insisting on a forfeiture of the policy, because their consent was not indorsed as literally required by the stipulation. (See, also, *Thompson* v. *St. Louis Mut. Life Ins. Co.*, 2 Ins. L. J., 422; *Peck* v. *New London Mut. Ins. Co.*, 22 Conn., 575; *Von Bories* v. *United Life, etc., Ins. Co.*, 8 Bush [Ky.], 133; May on Ins., § 370, and cases cited.) A rule is laid down by Mr. Bliss, in his work on life insurance, to the effect that if, at the time the acts are done or the declarations made by the company which are alleged to constitute a waiver or estoppel, the assured could not, in consequence thereof, by any possibility, have been damaged, there is, in law, no waiver. (§ 267.) Conceding this to be sound law, the present case is brought within his rule. It is plain that the plaintiff might have been, and is, seriously damaged, if the policy is avoided by want of compliance with the condition.

The general principle applied in *Pitney* v. *The Glen's Falls Insurance Company* must govern the case at bar. The only difference between the two cases is, that in the former the waiver or estoppel took place when the contract was entered into, while in the present case, the transaction occurred while the policy was in operation. This fact is not material. Scott testified that he had given consents in hundreds of instances. From the nature of the case, many must occur after the contract went into operation. To these, the rules of agency will apply in the same manner as in the other case. (*Brockelbank* v. *Sugrue*, 5 C. & P., 21; Bliss on Life Ins., § 304.) In other words, the contract of insurance being made

voidable, and not void by a failure to comply with the conditions precedent, at whatever stage of the contract such failure may occur, the doctrines of waiver and estoppel will be applicable, unless there is something special in the circumstances to prevent their application.

There was no error in the disposition of the cause in the court below, and the judgment should be affirmed.

All concur.

Judgment affirmed.