8L 513
4pi376

8L 513
110  735

AMERICAN CENTRAL INSURANCE COMPANY v. McCREA, MAURY & CO.

1. FIRE INSURANCE. *Policy. When stipulations will be considered waived.* When a policy of insurance on a distillery is issued and delivered containing a condition against running at night, but with full knowledge on the part of the general agent of the company, who countersigned and delivered the policy, that the distillery had always been, and was then being run at night, the condition will be considered as waived.

2. SAME. *Same. Subsequent insurance.* A general provision of a policy of insurance allowing additional insurance to a specified amount, waives to that extent a condition of the policy requiring notice and endorsement upon the policy of existing or subsequent insurance.

3. SAME. *Same. Same. When stipulations will be considered waived.* If the general agent of a foreign insurance company who delivers and countersigns a policy, and whose duty it is to endorse on the policy existing or subsequent insurance, has knowledge of such insurance, and is ready to make the endorsement, but postpones doing so to suit his own convenience, when the assured offers to produce the policies for the purpose, and in the meantime the property is destroyed by fire, a condition of the policy requiring such insurance to be endorsed on the policy will be considered as waived, notwithstanding another con-

33—VOL.8.

dition contained in it that the use of general terms, or anything less than a distinct specific agreement, clearly expressed and endorsed on the policy, shall not be construed as a' waiver of any printed or written condition or restriction therein.

4. SAME. *Same. Same. Agent.* If the agent, in such case, have knowledge of additional insurance to a specified amount, and consents to it without knowing precisely the insurance company or companies in which it is taken, a change of that insurance to a different company, otherwise unexceptionable, will not alter the result.

5. SAME. *Over insurance. Charge of court.* It was error to charge the jury that the only object of the clause against other insurance was to guard against the over insurance of property, and the consequent temptation to crime, and if the loss in this · case far exceeded the amount of the insurance of all the policies, the temptation guarded against never existed.

6. SAME. *Powers of company and powers of agent to waive conditions.* It was also error to blend together in the charge the power of the company to waive conditions and forfeitures and the power of the agent, without clearly and separately presenting the law regulating the agent's power, the evidence requiring such a charge.

### FROM DAVIDSON.

Appeal in error from the Law Court of Davidson county.    J. C. GUILD, J.

DEMOSS & MALONE, R. MCPHAIL SMITH and E. H. EAST for Insurance Co.

SMITH & ALLISON and ED. BAXTER for McCrea, Maury & Co.

COOPER, J., delivered the opinion of the court.

The American Central Insurance Company has appealed in error from a judgment recovered against it by McCrea, Maury & Co. on one of its policies insuring against loss by fire.

American Central Ins. Co. *v.* McCrea, Maury & Co.

McCrea, Maury & Co. were distillers at Nashville, having a large stock of liquors, and valuable machinery in the building in which the business was carried on and the liquors stored. The building, stock and machinery were destroyed by fire on January 28, 1873. McCrea, Maury & Co. held, claimed. and sued upon the following policies, of the following insurance companies, issued at the times and for the amounts specified:

May 15, 1872.

| 1 | Liverpool, London & Globe, with privilege of $10,000 additional, | $5,000 |
| 2 | Franklin, " " | 5,000 |
| 3 | American Central, " " | 5,000 |

January 7, 1873.

| 4 | Royal, with privilege of $25,000 additional, | 5,000 |
| 5 | Boatman, " " | 2,500 |
| 6 | Citizens, " " | 2,500 |

January 10, 1873.

| 7 | Equitable, with privilege of $25,000 additional, | 5,000 |

January 14, 1873.

| 8 | Louisiana Mutual, with privilege of $15,000 additional, | 5,000 |

These policies were all issued for one year from their respective dates. The first seven of them covered both stock and machinery, one half of the amount called for being on each. The last policy, that of the Louisiana Mutual, was exclusively on the stock of liquors. The insurance on stock was, therefore, in the sum of $20,000, and on machinery $15,000, in all $35,000.

McCrea, Maury & Co. brought separate suits on each one of these policies. The suit on the first policy against the Liverpool, London & Globe Insurance Company, was compromised before the trial. Judgment was recovered on the second policy, against

the Franklin Insurance Company, and compromised. Judgment was also recovered on the last policy, against the Louisiana Mutual, which was acquiesced in. The Boatman and Citizens companies were corporations of the State of Missouri, having their principal place of business at St. Louis. The suits on these policies were brought in the United States Court at St. Louis, and resulted in verdicts and judgments in favor of the insurance companies. The suits against the American Central, the Royal, and the Equitable were brought in the circuit court at Nashville, and resulted in judgments against each of the companies, which were reversed, upon appeal in error, by this court. Upon the second trial, judgments were again recovered against the companies, and these judgments are now before us by appeal in error. The case of the American Central will be first considered.

The policy of the American Central was issued May 15, 1872, for one year, in the sum of $5,000, one-half on the stock of liquors, and one-half on the machinery, with the privilege of $10,000 additional insurance. It contained the following provision: · "If the assured shall have, or shall hereafter make any other insurance on the property hereby insured, or any part thereof, without the consent of the company written hereon; or if the above-mentioned premises shall be occupied or used so as to increase the risk, or the risk be increased by any means whatever within the control of the assured, without the assent of the company endorsed hereon; or, if a manufacturing establishment, running at night, then in every such case

the policy shall be void." It also contained this condition: "The use of general terms, or anything less than a distinct, specific agreement, clearly expressed and endorsed on this policy, shall not be construed as a waiver of any printed or written condition or restriction therein." It further provided: "This insurance may also be terminated, at any time, at the option of the company, on giving notice to that effect, and refunding a ratable proportion of the premium for the unexpired term of the policy."

The insurance on the property was, after the issuance of this policy, increased, as we have seen, to $35,000. There was proof also tending to show that, in the months of October, November and December, 1872, the building, in which the stock and machinery were located, was changed so as to increase the risk. It was admitted, moreover, that the distillery had always been run at night, and was so run before, at the time of, and after the issuance of the defendant's policy. No endorsement of the consent of the company to the additional insurance, change of risk, or running at night had ever been made upon the policy. The policy was, however, issued at the same time with the policies of the Liverpool, London and Globe and the Franklin companies, and by the same agents, Peck & Cahill, who were the agents of all three of the companies, these companies being foreign corporations. The defendant, the American Central, was a corporation chartered by the State of Missouri, and having its principal place of business at St. Louis. It was doing business in this State under our insurance laws, through

Peck & Cahill as their agents, under a power of attorney which appointed them "agents and attorneys o the said company to countersign and issue the policies of the company, and otherwise to do and perform the customary acts and duties of insurance agents."

During the year 1872, and probably before the issuance of the policies of May 15, 1872, although the fact does not distinctly appear, McCrea, Maury & Co. had taken out policies of insurance on their stock to the extent of $5,000, through other agents, in the Ætna and Queen's companies, one-half the amount in each. These companies declined to continue the risks after the changes made by the insured in the building in the latter part of the year, and, at the instance of the agents of these companies, the policy of the Louisiana Mutual was taken out on January 14, 1873, for the same amount on the stock alone. Peck & Cahill knew of the original insurance for this sum, although they seem to have thought that it was exclusively in the Ætna. They did not know of the policy of the Louisiana Mutual until after the fire. At their solicitation, they were authorized by McCrea, Maury & Co., early in January, 1873, to place $15,000 more of insurance on the property, and undertook to do so with the knowledge that, if effected, the entire insurance would be $35,000. Under this authority, Peck & Cahill did obtain the additional insurance in the Royal, the Boatman, the Citizens and the Equitable companies, in all $15,000. These policies were received by them before the fire, but were not delivered to McCrea, Maury & Co. until after the fire. The premiums were paid and

received after the fire.   Peck & Cahill procured the policies of the Boatman and Citizens companies through the secretary of the American Central, by letter which gave such information that those companies wrote their policies so as to give the privilege of $25,000 additional insurance.   The Central company itself seems to have had no notice of the increase of risk in the building, nor of the other insurance of the 7th, 10th and 14th of January, except the notice implied from the foregoing facts.

No endorsement of the additional insurance was made upon the policy of the American Central.   There is proof, however, that Peck & Cahill, a week or two before the fire, requested McCrea, the active member of McCrea, Maury & Co., to bring up the policies held by the firm to be endorsed with the additional insurance, and that only a few days before the fire McCrea proposed, at the office of Peck & Cahill, to go after the policies for the purpose of having the endorsements made on them, and was requested not to do so because of some repairs then being made in the office.

Each of the other policies of January 7th, and the two policies of the 10th and 14th of January, contained the same provisions as those of the American Central policy touching over insurance, increase of risk, running at night and waiver of conditions.   No endorsement was made on any of them of the consent of the company to the previous or subsequent insurance, as the case may be.   The records of the suits on the Boatman and Citizens' policies, introduced in evidence,

show that they were avoided on the ground of over insurance.

It seems to be well settled that when a contract of insurance is executed with a full knowledge of an existing fact which would render it void under a condition precedent embodied therein, the condition or its breach will be considered as waived, because otherwise it would be an unmeaning form, the only effect of which would be to deceive and defraud. Where, therefore, a policy of insurance on a house provided on its face that if the building insured was on leased land the fact must be expressed in writing in the policy, and the house was on leased property and the fact not so expressed, the truth being known to the agent of the company issuing the policy, the court felt itself constrained "by the force of authority" to hold that the condition was waived: *Van Schoick* v. *Niagara Fire Ins. Co.*, 68 N. Y., 434. So, where the policy contained a condition that it should be void if refined, coal or earth oils were used on the premises, and the agent had inspected the premises and knew that kerosene oil was used for lighting them: *Bennett* v. *North British, etc. Ins. Co.*, 81 N. Y., 273. So, of the condition that the policy should be countersigned by the local agents: *Myers* v. *Life Ins. Co.*, 27 Penn. St., 268; *Hibernia Ins. Co.* v. *O'Connor*, 29 Mich., 241. So, of the condition that a memorandum of prior insurances should be made on the policy: *Crane* v. *National Ins. Co.*, 16 Md., 269. So, of the customary clause in a policy that it will not be binding until the premium is paid in fact: *Eagan* v. *Ætna Fire Ins. Co.*, 11 W.

Va., 583; *Trustees, etc.,* v. *Brooklyn Fire Ins. Co.,* 19 N. Y., 305; *Murphy* v. *Southern Life Ins. Co.,* 3 Baxt., 440.   In view of the law as thus settled, no point seems to have been made in the court below, or is made in this court, upon the fact that the distillery of the assured was run at night.   It had always been so run, and the fact was well known to the general agents of the insurer.

The defense is rested upon the over insurance and the increase in the risk by the change of the building after the issuance of the policy.

The policy of the American Central allowed additional insurance to the amount of $10,000, and to that extent furnished its own rule of construction as to the definiteness meant to be required in the consent to future insurance: *Westchester Fire Ins. Co.* v. *Earle,* 33 Mich., 144; *Philbrook* v. *New England Mut. Ins. Co.* 37 Me., 137.   It is not contended that the additional insurance thus allowed required any further consent, or any endorsement on the policy.   The amount allowed was covered by the other two policies issued on the same day.   The insurance in the Ætna and Queen, whether obtained before or afterwards, and the insurance afterwards obtained in the other companies mentioned were in excess of the amount allowed, and were never endorsed on the policy.   Nor was the increase in the risk, if the risk was increased by the change in the buildings, ever sanctioned by an endorsement of the consent of the company on the policy.   The answer made to these defenses is that the conditions were waived by the knowledge of the agents of the

company of the facts upon which they rest, or, as it may be otherwise expressed, the company is estopped by the facts to make the defenses.

The question, raised and argued in the other cases of McCrea, Maury & Co., that the subsequent insurance, being void by over insurance or other cause, will not affect the policy in suit, does not arise in this case. For the policy of the Louisiana Mutual, which was on the stock alone, expressly allowed $15,000 of additional insurance, and as the entire amount of insurance then existing on the stock was only $20,000, there was no over insurance as to this company. And the recovery of judgment on this policy, which was acquiesced in, shows that there was no other ground for impeaching its validity. There was, therefore, over insurance so far as the American Central is concerned, by reason of the subsequent policy of the Louisiana Mutual. The issue is consequently narrowed down to that of waiver or estoppel.

" What acts or declarations," say the learned editors of the American Leading Cases, " will operate as a waiver of the warranties or conditions, which play a large and important part in most modern policies of insurance on life or against fire, is a question about which the authorities differ too much to be easily reduced to order and method. For while the courts have been desirous on the one hand to carry out the general purpose of the contract as one of indemnity, they have been fettered on the other by stipulations introduced as safegards against fraud or malpractice, and the conflict has arisen between the general design and the

incongruity or unfitness of the means employed. which has at all periods formed one of the difficulties of the law": 2 Amer. L. C., 911, (5th ed.)    The struggle on the part of the courts has been to protect the innocent policy holder from the literal operation of conditions designed for one purpose and used for another. Each new decision has been met by a new condition, and the struggle is recommenced.    Perhaps it would have been better to have left the parties to make their own contracts in this as in other cases, subject to the ordinary rules of interpretation.    For after all, the insurance companies depend upon popular favor for support, and, if their contracts had been found too rigid to attain this end, they themselves would have simplified them, instead of, as now, exercising their utmost ingenuity to increase their complexity.    Our duty is, however, to administer the law as we find it.

The policy in suit undertakes to provide that the consent of the company to additional insurance over the amount allowed, and to any increase of risk, shall be endorsed on the policy, and that this condition shall not be waived except by a specific agreement, clearly expressed and endorsed on the policy.    It was at first held by the courts, when these requirements were inserted in policies, to be essential that these requirements should be literally complied with, and that anything short of the prescribed formalities would work a forfeiture. But the weight of authority is now that if notice be duly given to the company, or its agent, of the additional insurance or increased risk, and no objection is made, the company will be estopped to insist upon a

forfeiture of the policy because their consent was not endorsed, as literally required by the stipulation. The authorities *pro* and *con* are collected in May on Ins., secs. 369, 370; 2 Amer. Lead. Cas., p. 911; Wood on Ins., secs. 496, 497.

The reasoning by which the later conclusion is reached may be briefly epitomized. In the first place, the contract of insurance is not within the statute of frauds, and may be by parol: *Commercial Ins. Co.* v. *Union Mut. Ins. Co.*, 19 How., 318; *Relief Fire Ins. Co.* v. *Shaw*, 94 U. S., 574. The policy may, therefore, be renewed by parol, and from year to year: *Sanborn* v. *Fireman Ins. Co.*, 16 Gray, 448; *Post* v. *Ætna Ins. Co.*, 43 Barb., 351. The policy may be thus renewed after the property insured has been sold contrary to its terms, and the interest of the assured turned into that of a mortgagee: *Whited* v. *Germania Fire Ins. Co.* 76 N. Y., 415. The contract may be made retrospective by parol: *Security Fire Ins. Co.* v. *Kentucky M. & F. Ins. Co.*, 7 Bush, 81. It seems to follow that a parol permission may equally be given, although the terms of the policy require the permission to be endorsed on the policy: *N. W. Iron Co.* v. *Ætna Fire Ins. Co.*, 26 Wis., 78. Or a forfeiture waived by parol: *Warren* v. *Ocean Ins. Co.*, 16 Me., 439. And, *a fortiori*, where there is an understanding that the endorsement shall be made: *Rathbone* v. *City Ins. Co.*, 31 Conn., 193.

A written contract may be changed by parol, and this although it stipulate that it shall only be changed in writing, for the obvious reason that men cannot tie their hands or bind their wills so as to disable

them from making any contract allowed by law, and
in any mode in which it may be entered into: *Pechner*
v. *Phœnix Co.*, 65 N. Y., 195; *Ins. Co.* v. *Wilkinson*,
13 Wall., 222. "A written bargain is of no higher
legal degree than a parol one. Either may vary or
discharge the other, and there can be no more force in
an agreement in writing not to agree by parol, than
in a parol agreement not to agree in writing. Every
such agreement is ended by the new one which con-
tradicts it": Per Campbell, J., in *Westchester Fire Ins.
Co.* v. *Earle*, 33 Mich., 153. See to the same effect
*Ins. Co* v. *Norton*, 96 U. S., 234.

A contract, express or implied, founded upon suffi-
cient consideration, even though it be only by way of
injury to one of the parties, would fall within these
principles. And the cases go to the extent of hold-
ing that if the agent be authorized to do the act re-
quired by the condition, he may bind the company by
his parol waiver. For it is in the nature of a condi-
tion precedent to be subject to waiver, and that may
be either oral or in writing: *Pitney* v. *Glen's Falls
Ins. Co.*, 65 N. Y., 25. In this connection it may be
noticed that the decisions have transferred to the courts
of law in this class of cases, the equitable doctrine of
estoppel, where a parol license or assent has been given
in place of a license or assent in writing as required
by the power under which the party acts: *Planters
Ins. Co.* v. *Myers*, 55 Miss., 479 Thus, where prop-
erty has been given by will upon condition that the
grantee marry with the written consent of the trustee,
executor, or other person named, a parol assent has

been held good to vest the title: Per Dwight, Com. in *Pecher* v. *Phœnix Ins. Co.*, 65 N. Y., 195, citing *Lord Strange* v. *Smith*, Amb., 363; *Worthington* v. *Evans*, 1 S. & S., 165. So, in case of leases requiring assent in writing to sub-letting, or alteration: *Macher* v. *Foundling Hospital*, 1 V. & B., 188; *Richardson* v. *Evans*, 3 Mad., 218. And the waiver of a forfeiture under a policy has been likened to a waiver of a forfeiture under a lease: Per Mr. Justice Bradley in *Ins. Co.* v. *Norton*, 96 U. S., 242, citing *Doe* v. *Meux*, 4 B. & C., 606; *Doe* v. *Birch*, 1 M. & W., 402; *Ward* v. *Day*, 4 B. & S., 335. The doctrine of waiver, it has been well said, to avoid the enforcement of conditions in a policy, is only another name for the doctrine of estoppel: *Globe Mutual Life Ins. Co.* v. *Wolff*, 95 U. S., 326. There should be, to constitute a waiver of the forfeiture of a policy, either a contract supported by a consideration, or the necessary elements of an estoppel: *Mason's Ben. Soc.* v. *Baldwin*, 5 Rep., 648; *Ripley* v. *Ætna Ins. Co.*, 30 N. Y., 136, 164. In the latest case in New York it is said that a waiver need not be based upon any new agreement or an estoppel: *Titus* v. *Glen's Fall Ins. Co.*, 81 N. Y., 410. And see *Viele* v. *Germania Ins. Co.*, 26 Iowa, 9; *Atlantic Ins. Co.* v. *Goodall*, 35 N. H., 328.

In the case before us it is clear that Peck & Cahill, the agents of the American Central company, knew of the change in the building in which the business of the assured was carried on, and did not think the change increased the risk. For they not only allowed this risk to stand, but procured additional insurance

American Central Ins. Co. *v.* McCrea, Maury & Co.

at the same rate of premium. Two of the policies covering the additional insurance were obtained through the secretary of the Central American company, and by letters which contained the information that the insurance was intended to be raised to $30,000. These agents were also aware of the outside insurance which was first in the Ætna and Queen, and afterwards in the Louisiana Mutual. The proof leaves no doubt that these agents intended to enter the proper endorsements on the policies in relation to the additional insurance, and that the endorsement was not made before the fire because of their own request, and to suit their convenience. It is equally clear that McCrea, Maury & Co. acted under the belief, induced by these agents, that the policy in suit was in force for their protection. Under these circumstances, the jury, under a proper charge, would have been warranted in finding that there was a waiver of the condition, or the forfeiture, if the agents had authority to make the contract or waiver.

The policy in suit was countersigned by Peck & Cahill as the agents of the American Central Company, under a power in writing which authorized them to countersign and issue the polices of the company, "and otherwise to do and perform the customary acts and duties of insurance agents." There is testimony in the record tending to show that it was their duty, as agents, to make the endorsement on the policy of the assent of the company to the additional insurance and change of risk. The insured were expected to deal with them in all matters touching the policy.

Such an agency has been held to be sufficient to au-
thorize the agent to waive the conditions in question,
or the forfeiture occasioned by the failure to literally
comply with them, and to bind the company by their
acts in that regard in the way of equitable estoppel:
*Wheeler* v. *Watertown Ins. Co.*, 120 Mass., 330; *Pech-
ner* v. *Phœnix Ins Co.*, 65 N. Y., 207; *Ins. Co.*, v.
*Wilkinson*, 13 Wall., 222; *Westchester Ins. Co.*, v.
*Earle*, 33 Mich., 143. And the objection to the want
of knowledge of the transfer of the insurance on the
stock in the Ætna and Queen companies to the Louis-
iana Mutual would be purely technical, such additional
insurance having been known and acquiesced in: *Col-
lins* v. *Farmville Ins. Co.*, 79 N. C., 279; *Pitney* v.
*Glen's Falls Ins. Co.*, 65 N. Y., 26; *Baptist Society*
v. *Hillsborough, etc., Ins. Co.*, 19 N. H., 550. The
expressed willingness of the agents to make the proper
endorsements of the insurance on the policy in suit,
and the failure to do so occasioned by their own re-
quest, would make out a waiver or estoppel within the
rule. Upon a proper charge, the jury might, there-
fore, have found that the agents of the company were
authorized to waive the conditions on the forfeiture for
non-compliance.

The only question left, is whether the charge of the
court was substantially correct within the principles
thus established. The charge is open to objection as
to the order in which it presents the law to the jury.
For, his Honor, the trial judge, first delivered a writ-
ten charge, the substance of which was that, notwith-
standing the conditions of the policy in reference to

over insurance and increase of risk, the conditions might be waived by the agents if they had authority so to do, and that the jury might look to the power-of-attorney under which they acted, in connection with the policy and the other testimony, to ascertain their authority. He also charged that the company might waive the conditions or the forfeiture, with full knowledge of the facts, and that the jury might look to the conduct of the company, and of its agent sent out to investigate the case and adjust the loss, if he communicated the facts to the company, to determine whether there was any such waiver. Afterwards, upon request of the company, for certain special instructions, he charged all of the propositions as requested, "to be taken in connection with his written charge upon the subject of waiver and notification as therein expressed." The original charge and propositions are not in conflict, as argued by the counsel of the defendant, but they were presented in reverse order. In effect, his Honor says, that if the policies taken out subsequently to the policy in suit were issued without the knowledge of the company sued, or its agents, they would, being *prima facie* valid, constitute over insurance, and render the policy in suit voidable, unless the condition was waived as explained in the charge.

But we are constrained to reverse the judgment upon other parts of the charge. His Honor instructed the jury that the only object of the clause of double insurance was to guard against the over insurance of property, and the consequent temptation to crime. And if the loss in this case far exceeded the amount of

the insurance of all the policies, the temptation guarded against never existed. This was clearly erroneous. A positive stipulation of a contract cannot be dispensed with, merely because the jury may think, upon the proof on trial, that the supposed object of the stipulation was otherwise attained. That would be for the court and jury to make a contract for the parties, instead of enforcing the contract made.

The charge blends together two entirely different questions, the power of the insurance company to waive a condition of the policy or a forfeiture, and the power of the agent. There can be no doubt of the power of the company. The doubt was as to the authority of the agent, and this point should have been clearly presented to the jury separate from the other. The judge said to them: "If the company, on being informed of all the facts touching a violation of the conditions and loss by fire, appointed an adjuster to ascertain the loss, and settle the amount of the same, without objection as to a breach of any of the conditions, you should look to such facts, in connection with the action of the agent, upon the question of a waiver of such assent being endorsed on the policy, and give them such weight, with all the facts found, as they may be entitled to." Undoubtedly, these facts would have supplied any defect of authority on the part of the agent, but there was no evidence introduced to justify their submission to the jury in connection with the question of the agent's authority. There is no distinct and separate enunciation of the law on the point of the agent's power in the premises.

Reverse and remand for a new trial.