## FRENCH v. THE PEOPLE.

1. CRIMINAL LAW—ACCESSORY.

One who merely aids and advises another in a legitimate matter is not an accessory within the meaning of the criminal code.

2. SAME—INSURANCE.

One who aided and advised an adjustment committee in adjusting a loss by fire, although not licensed by the superintendent of insurance, as provided by statute, is not liable to the penalty therein prescribed.

3. STATUTORY CONSTRUCTION.

Statutes making new offenses and providing for conviction and punishment must be strictly construed.

4. CONSTITUTIONAL LAW.

The calling of an adjuster of insurance is a legal business and profession. He has a right to follow it in any state where his employment calls him. Any law abridging or restricting that right would be void.

5. STATUTORY CONSTRUCTION—INSURANCE.

In adjusting a loss by fire the agent is not transacting the business of fire insurance in the state as those words are used in the statute.

6. INSURANCE.

Contracts of insurance made out of the state by correspondence upon property in this state are valid.

*Error to the District Court of Arapahoe County.*

ON AUGUST 14, 1893, The Crescent Flouring Mills, in the city of Denver, the property of The Colorado Milling and Elevator Company, was destroyed by fire, on which the owners had a policy of insurance for $10,000 issued by The Millers National Insurance Company of Chicago. Fifteen or sixteen other insurance companies had issued policies and were interested in the loss. They had appointed a committee of three to ascertain the loss preparatory to an adjustment. The Millers National Insurance Company was not represented by such committee, but sent French (plaintiff in error) as its agent to ascertain and adjust the amount for which it was liable on its policy. French was not in the general employment of the company as agent or otherwise. He was a

professional adjuster,—an expert, particularly as to the value of mills and milling machinery,—and took employment generally from those requiring his services. The Millers National Insurance Company had no agency or office in this state. The application for the insurance was made by letter to its home office in Chicago; accepted and the policy sent by mail. French, on his arrival, was not made a member of the adjusting committee, but met and advised with the committee, that gladly availed itself of his superior knowledge of the subject to be determined. This was the extent of appellant's participation in the affair.

An information was filed against him for a violation of the statutes of the state concerning insurance. He was arrested, tried to the court without a jury, convicted, and a fine of $500 imposed, and the case brought to this court by writ of error.

Mr. V. D. MARKHAM and Mr. M. H. BEACH, for plaintiff in error.

THE ATTORNEY GENERAL, and Mr. H. T. SALE, of counsel, for the People.

REED, P. J., delivered the opinion of the court.

Counsel for appellant attack the information in argument. The first assignment of error is, " That the information does not set forth or state any facts constituting an offense against the defendant." Although it is not as full and explicit and as technically correct as it might have been, it appears to have been sufficient in substance. In my view of the case, it may be determined upon other and more satisfactory grounds; consequently the supposed error will not be further regarded.

The statute appellant was charged with violating is section 16 of " An Act to Establish an Insurance Department in and for the State of Colorado and to Regulate the Insurance Companies Doing Business Therein," Gen. Stats., sec. 16, chap. 55, as follows:

" It shall be unlawful for any person, company or corpora-
tion in this state, either to procure, receive or forward appli-
cations for insurance in or to issue or to deliver policies for
any company or companies not having complied with the
provisions of this act, or to adjust any loss, or in any manner,
either directly or indirectly, to aid in the transaction of the
business of insurance with any such company, unless duly
authorized by such company and licensed by the superinten-
dent of insurance, in conformity to the provisions of this act,
and any persons violating the provisions of this section shall
be liable to a penalty of $500 for each and every offense."

The intention of the legislature and the wisdom and neces-
sity of the law are obvious; its object, to protect the people
against irresponsible foreign insurance companies and subject
all foreign insurance companies to the supervision of the state
insurance department, and, by license fees, provide a fund to
defray the expenses of such department. For the purposes of
this opinion I am willing to adopt, as far as it goes, the state-
ment as to the scope, object and intention of the act as made
by the learned attorney general in his printed argument :

" The object is to regulate insurance, a business that so
intimately concerns the whole business world; to prevent
persons who have no proper qualifications from engaging in
the business; and to force all companies doing business in
this state to pay their just quota of the fees which make up
the insurance fund." Again : " *But the principal object of our
statute seems to be to protect the insured from fraud,* and to
cause all companies doing an insurance business to contribute
to the insurance fund, which in turn is to be used to prevent
this very fraud," etc. In this definition there is evidently an
important omission in the second clause. Not all companies
doing an insurance business are expected to contribute to the
fund. It should be limited to those doing insurance business
within the state.

There is one line of argument and construction of the stat-
ute that should not pass unnoticed, as it may have, more or
less, influenced the decision, though rather vaguely and in-

definitely expressed.   It is, in effect, that by reason of our statute contracts of insurance made by residents of the state with foreign insurance companies, though legal where made, are a violation of the state law.   This contract of insurance was made by the resident Milling Company by correspondence, and was made at the home office of the Insurance Company in the city of Chicago.   The attorney general says:

"If the argument of counsel for plaintiff in error is to prevail, then, in order to evade the requirements of the statute, and to escape payment of dues to the superintendent of insurance, it would only be necessary to issue policies from offices outside of the state, and pay losses at the place where the policy was issued, and the adjustment, and the negotiations leading up to and following it, and the fact that the contract of insurance affects property situate in Colorado, and premiums are paid by its citizens, may be laid out of the case, as being matters not properly belonging to 'the business of insurance.'"

Again : "It is no defence to say that the policy was made out in Chicago and mailed to Denver, and that the adjustment of the loss was finally consummated in Chicago and the money paid there.   The contract of insurance from the time it was received in Denver was in force here in this state until the destruction of the property insured, and the right to recover the amount of the loss existed at all times in this state, from the time of the loss until the time of the payment. It is of no consequence whether the final act of adjustment in the payment of the loss occurred in Chicago or here in Denver.   The business of insurance was being carried on here in Colorado unlawfully by The Millers National Insurance Company from the time it replied to Mr. Mullen's first letter up to the time of the adjournment of the committee of adjustment from Denver to Chicago, and all the acts of plaintiff in error in aid or abetment of that business was in direct contravention of the letter and spirit of our insurance law."

The only logical conclusion from the argument is that because Colorado has a law controlling the business of insur-

ance within the state, any contract made by a citizen of the state, for insurance within the state, in a foreign office, though legal where made, was a violation of state law and illegal here. If such is a proper construction of the law, it is unnecessary to say that the law is worthless and void, abridging and restricting constitutional rights guaranteed by the constitution of the state and of the United States.

To say that a resident of this state cannot make a contract pertaining to his property in this state, in Chicago, New York or London, if lawful where made, unless a license is obtained and money contributed to a fund, is so directly in conflict with universal law as not to need farther comment.

Before taking up the principal questions involved, there is another contention of the learned attorney general that may be noticed. After speaking of the participation of appellant in the action of the committee, he contends that a conviction can be had under the statute for a partial adjustment or an attempt to adjust, and reasons that it was not necessary that appellant should have been a member of the committee, that it was sufficient if he was present, *aiding and advising*, and in support of the proposition cites section 701 of General Statutes, defining an "accessory" in a criminal offense, and adds the general definition of an accessory from the text books. I am at a loss to know for what purpose this was put in. There is no claim that the committee were violating the law or guilty of crime or criminal intention. If their pursuit and business was lawful, I cannot understand how there could be an accessory, when he was only aiding and advising in a legitimate matter.

In the insurance law under which the conviction was had, there is no provision for the punishment of accessories, and the law can hardly be extended so as to warrant the conviction of a party as accessory, under the law of insurance.

Penal statutes of this character, making new offenses and providing for conviction and punishment, must, according to all the authorities, be strictly construed. The provisions cannot be extended by inference or implication or analogy to other acts.

There is no controversy in regard to the facts. Briefly stated, the case made by the evidence is: The Millers National Insurance Company was indebted to The Colorado Milling and Elevator Company in a sum not exceeding $10,000 for losses sustained by fire. The exact amount had to be found and settled. For the purpose of fixing the amount, the Insurance Company employed and sent an expert in the business. The fixing of the amount of loss and its proper distribution *pro rata* among the different companies interested was a necessary and indispensable preliminary to payment of the debt. The other companies had appointed a committee to investigate and ascertain the loss. Such committee had no power to finally determine the loss and provide for payment. Its conclusions were only advisory, and became operative if adopted by the principals. Consequently, its duties were only clerical, to arrive at a basis upon which an adjustment could be had. The fact is established by the evidence that there was no adjustment of any losses by the committee in this city ; that it afterwards took place in the city of Chicago.

The language of the statute is: " It shall be unlawful for any person * * * *or to adjust any loss*, or in any manner, either directly or indirectly, to aid in the transaction of the business of insurance with any such company," etc. The conviction in this case could only have been had under the clause prohibiting adjustment. *First*, the offense by the words of the statute, as in all other criminal and penal acts, must have been a completed offense ; the adjustment must have been made. *Second*, taking the evident intention of the legislature and the construction of the statute as given by the learned attorney general, in order to be a violation of the statute the transaction must have been with the assured,—a dealing in connection with the insurance. There is no evidence whatever of any attempt at settlement or adjustment by appellant with the company that had suffered the loss. To make it an offense within the purview of the statute the transaction must have been with the company. It was the only person

who could do the business and make a contract of adjustment. The committee with which appellant met was powerless to adjust without the concurrence and agreement of the insured. Consequently no offense was established. If the law is to be construed against the people of Colorado, and insurance companies indebted to its citizens prohibited from paying, the expressed intention of the act to protect the citizens of the state would be perverted, and the citizen injured instead of protected.

I can see no good legal reason why an insurance company owing a debt to a citizen should be any more restricted in its right to send an agent to ascertain the amount, preparatory to payment, than any other debtor. Any construction of the statute that would have that effect would violate public policy and fundamental law, and be void.

I do not believe the construction put upon the statute in this case was within either the intention or spirit of the act, and the conviction cannot be sustained.. Appellant was not the *agent* of the Chicago company. By reason of his technical knowledge and ability in his particular department, he was employed by any and all companies needing him.

The calling, with him, was his business and profession. Being a legal business, he had a right to follow it in any state where his employment called him, — a right declared and guaranteed by the constitution of the United States. Any law abridging or restricting that right would be void. Hundreds of authorities in support of the general proposition might be cited; but see, as to legislative power and limitations, *Butchers' U. Co. v. Crescent City Co.*, 111 U. S. 746; *Taylor v. Porter et al.*, 4 Hill (N. Y.), 140; *Corfield v. Coryell*, 4 Wash. (U. S. C. C.) 371; *In re Jacobs*, 98 N. Y. 98; *Live Stock, etc., Ass'n v. Crescent City Co.*, 1 Abb. (U. S.) 388; *Godcharles & Co. v. Wigeman*, 113 Pa. St. 431; *People v. Marx*, 99 N. Y. 377.

That appellant was not an agent of the Chicago company, for any purposes prohibited by the statute, see *Weed v. Fire Ins. Co.*, 116 N. Y. 106; *Ins. Co. v. Wilkinson*, 13 Wall. 222;

*Pechner v. Phœnix Ins. Co.*, 65 N. Y. 207; *Marvin v. Life Ins. Co.*, 85 N. Y. 283.

*People v. Gilbert*, 51 N. Y. Sup. Court (44 Hun), 522, was a case parallel with the one under consideration, construing a statute identical in its provisions. It was then held, "That in adjusting the loss the agent was not transacting the business of fire * * * insurance in the state as those words were used in the statute; that the adjustment of a loss is merely a means of ascertaining the amount of an admitted indebtedness; and that the legislature did not intend to prohibit such adjustments by uncertified agents of fire insurance companies of other states and foreign countries where there appeared to be nothing unlawful in the contract out of which the indebtedness had arisen." In the opinion the learned court says:

" Foreign insurance corporations were not to be permitted to come here into our own territory and solicit business and take risks, unless they would submit to certain conditions imposed for the benefit of those who might deal with them. If they make legal contracts elsewhere, however, relating to property in this state, it is not an advantage, but an injury, to the New York property owner to prohibit them from fulfilling such contracts here. Indeed, there might be some question how far the power of the legislature extends in this direction. So that, if we consider the evident object sought to be attained by the statute, it would seem that the adjustment of a loss and indebtedness is not within purview of the prohibition, which was intended not as a protection to New York insurance companies against outside competition, but as a safeguard to those seeking insurance in outside companies represented within the state."

· That contracts of insurance made out of the state by correspondence, as in this case, upon property in this state, are valid, and can be enforced, see *Lamb v. Bower*, 7 Biss. (U. S. C. C.) 372, and cases cited.

The judgment of conviction must be reversed and cause remanded.

*Reversed.*