IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 21, 2018 Session

## CHRISTINE SONG ET AL. v. JANE C. CHUNG ET AL.

**Appeal from the Chancery Court for Blount County**
**No. 2017-048     Telford E. Forgety, Jr., Chancellor**

_____

**No. E2018-00114-COA-R3-CV**

_____

This case involves a claim of unjust enrichment following the execution and partial performance of a contract for the sale of a laundry and dry cleaning business. On December 21, 2012, the parties executed a contract, selling the business in exchange for $100,000.00. The buyers tendered $50,000.00 at the time of the contract's execution and simultaneously tendered a promissory note to the seller for the remaining $50,000.00 with a pre-arranged payment plan. The contract contained a provision stating that it was conditioned on the buyers' ability to obtain a satisfactory commercial lease from the owner of the building where the business was located. The buyers took possession of the business and began making payments pursuant to the promissory note. However, the buyers were unable to enter into a written or long-term lease with the building owner. The buyers ceased making payments on the promissory note after nine months. In November 2013, the buyers began contacting the seller, requesting a return of the down payment and money paid on the promissory note in exchange for the business. In June 2014, the buyers filed a complaint seeking, *inter alia*, a declaration that the contract of sale was void due to an unsatisfied condition. The seller filed an answer and counter-complaint requesting enforcement of the contract and promissory note, including the enforcement of a vendor's lien held on the business equipment. On December 19, 2017, the trial court entered an order dismissing the buyers' complaint and granting the seller's requested relief pursuant to the contract and promissory note. The buyers have appealed. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and CHARLES D. SUSANO, JR., J., joined.

James H. Price and Michael R. Franz, Knoxville, Tennessee, for the appellants, Christine Song, David Song, and Michelle Song.

Jane C. Chung, Duluth, Georgia, Pro Se.

**OPINION**

I. Factual and Procedural Background

This contract action arose from the sale of a dry cleaning and laundry business, Unique Cleaners, located in Alcoa, Tennessee. Jane C. Chung, a co-defendant in the original action, owned Unique Cleaners and operated the business with her two brothers and co-defendants, Myung Jong Lee and Cheong Jong Lee, from 1998 until its eventual sale in 2012. It is undisputed that throughout the approximately fourteen years that Ms. Chung possessed Unique Cleaners, she did not own the building space in which the business was located and instead leased the space from the building's owner, Pauline Morrisey. Although this lease had originally been in writing, Ms. Chung had begun leasing the building space on an oral, month-to-month basis after the term expiration of the written lease some time prior to the sale of Unique Cleaners.

In 2012, the plaintiffs in the original action, Christine Song and her parents, David Song and Michelle Song (collectively, "the Songs"), contacted Ms. Chung in response to an advertisement for the sale of Unique Cleaners.[1] The Songs subsequently entered into negotiations with Ms. Chung for the purchase of Unique Cleaners in Christine Song's name with her parents' intending to run the business. Testimony and exhibits presented during trial demonstrated communication among the parties and Ms. Morrisey regarding a proposed lease. Ms. Chung contacted Ms. Morrisey through a letter dated October 25, 2012, informing her of the pending sale and requesting arrangements for "a lease, minimum of twenty years starting January 1, 2013[,]" for the Songs. Ms. Morrisey responded to Ms. Chung with an email message on November 19, 2012, giving "a list of requirements [that her] attorney needs," including a full name, address, phone number, social security number, a credit check, and "parents as assignees." Ms. Morrisey also specified that the lease would be for five years with a five-year option to renew and added: "Possibility more information needed before a lease can be made[.]" Ms. Chung forwarded this message to the Songs on the same day.

On November 20, 2012, Ms. Chung sent Ms. Morrisey an email forwarding the requested information. Ms. Morrisey responded with an email on the same day stating that she "will get this info to the attorney after Thanksgiving and go from there[.]" On

---

[1] For the purpose of clarity, we will refer in this Opinion to each of the Songs individually by his or her given name and surname.

2

December 17, 2012, Ms. Chung again emailed Ms. Morrisey, notifying her that the Songs had recently moved into town and would be ready to close on the sale of Unique Cleaners as soon as the lease was ready. On December 18, 2012, Ms. Morrisey responded with an email stating: "The Parents will also be required to sign the lease. Will let you know as the paper work progresses." Ms. Chung forwarded this message to the Songs as well.

On December 21, 2012, the Songs met with Ms. Chung and executed a "Contract of Sale" and "Security Agreement," with an undated "Promissory Note" attached.[2] The Contract of Sale contained the following provisions as pertinent to this appeal:

1.  Purchase Price. The purchase price for this transaction shall be a total of One Hundred Thousand ($100,000.00) Dollars. There shall be a down payment of Fifty Thousand ($50,000.00) Dollars.

    The balance of the purchase price of $50,000.00, bearing interest at two percent (2%) per annum, shall be paid in fifty (50) equal monthly installments of $1,043.08 each, said payments to begin on February 1, 2013 and to be payable on 1st day of each month thereafter until paid in full. The parties agree to set forth the terms of these payments in a Promissory Note which is attached hereto as Exhibit A and incorporated herein.

2.  Assets Sold and Purchased. The assets hereby sold and purchased consists [sic] of all of the equipment, supplies, inventory, receivables, after the date of closing, the name and good will of Unique Cleaners.

    A list of said items is attached hereto as "Exhibit B" and is incorporated herein by reference. The parties further agree that the Sellers shall have a lien on all such items to secure the payment of the purchase price thereof and that appropriate UCC-1 filing shall be made with the Tennessee Secretary of State and the Blount County Register of Deeds to perfect such lien.

3.  Building Premises. The parties understand and acknowledge that the Seller does not own the property where this business is being operated and that a proper lease or sub-lease must be obtained from the landlord to allow the continued operation of this business at this same location. The conclusion of this transaction is contingent upon

---

[2] Christine Song and Ms. Chung are the only signatories to the Contract of Sale and the Security Agreement. The Promissory Note was signed by Christine Song, David Song, and Michelle Song.

a lease and/or sub-lease from the landlord and/or Seller that is acceptable to both Seller and Buyer and the parties further acknowledge and agree that this Contract of Sale shall not become effective until and unless a lease and/or sub-lease is signed by both Seller and Buyer, but that upon such signing, this Agreement shall immediately be in full force and effect.

\* \* \*

6. Condition of Assets. Buyer acknowledges that she has had ample opportunity to inspect the premises, the equipment, fixtures and all other assets of the business and, in fact, has been working in said business for a period of time and is hereby accepting the assets hereby purchased in an "as-is" condition, subject only to Seller's warranty that all equipment shall be in operating order as of the date of closing of this sale.

7. Assistance and Training. Seller shall assist and train Buyer in the running of the business for thirty days after closing at no additional charge to the Buyer. However, if Buyer acknowledges to Seller that she does not need the full thirty days of assistance, this period can be shortened by agreement of the parties. Thereafter, for a period of one year, the Seller shall make herself available for telephone consultation from time to time at no charge.

\* \* \*

12. Costs and expenses. Seller agrees to pay all costs and expenses connected with the perfection of her lien consisting of the filing fees and costs for the filing of the UCC-1 financing statement with the Secretary of State and the Register of Deeds. All other expenses of this transaction, including attorney fees, the preparation of contracts and other agreements and the preparation of financing statements and all other documents shall be divided equally by the parties, except the preparation of leases and/or sub-leases, which shall be an expense of the Buyer.

13. Remedies in the Event of Default. While not contemplated by either party, in the unlikely event of Buyer's default in the completion of the purchase of the assets herein contracted for, the Seller shall have

4

the following options in attrition [sic] to any other remedies available at law or in equity:

(a) The Seller may, without seeking court intervention, re-enter the business premises and resume ownership of the assets herein sold and resume the position of tenant in the business premises, and thereafter, Buyer shall owe no other amounts to Seller but Seller shall consider and both parties shall deem that the payments made to the point of default, shall be payment in full for the use of such assets during said period of time.

(b) Seller may exercise her rights under the liens provided for herein and can offer the assets for sale to the highest bidder, and upon such sale, at Seller's option, look to the Buyer for payment of any deficiency between the foreclosure sales price and the contract sales price.

14.  General Provisions.

(a) This agreement may not be amended or altered in any way except in a writing signed by the parties hereto.

* * *

(e) This document and the exhibits and other documents attached hereto or referred to herein constitute the entire agreement between the parties.

(Emphasis added.)

The contract documents were drafted by attorney L. Lee Kull, who later testified via deposition, presented as an exhibit at trial, that the parties signed the documents during a meeting in his office. It is undisputed that the Songs had not been provided with a written lease for the building space prior to the execution of the contract documents. It is also undisputed that the Songs took possession of Unique Cleaners and assumed operation of the business following the execution of the contract. The Songs made monthly payments to Ms. Chung according to the terms of the Contract of Sale and Promissory Note for nine months, beginning in February 2013.

The Songs ultimately were not able to obtain a written lease for the building space. The Songs continued to operate Unique Cleaners without a written lease for the building

space, despite several attempts to obtain one from Ms. Morrisey. According to David Song's testimony during trial, the Songs made monthly lease payments to Ms. Morrisey, either directly or through her son or daughter. David Song testified that he met Ms. Morrisey in person twice while his wife met Ms. Morrisey two or three times, stating that each time he or his wife saw Ms. Morrisey, they would ask for a lease. Ms. Chung also emailed Ms. Morrisey on January 28, 2013; December 11, 2013; and January 11, 2014, inquiring about a written lease for the Songs. For her part, however, Ms. Morrisey testified during trial that "these new people, if they mentioned a lease, I said, no, because at my age I just don't need to sign a fifteen-year lease or a ten-year lease."

Beginning on November 18, 2013, David Song sent three certified letters to Ms. Chung, requesting a rescission of the contract because the Songs were unable to obtain a written lease as purportedly conditioned in the Contract of Sale.[3] Testimony demonstrated that some time later, Ms. Chung and three other individuals attempted to physically repossess Unique Cleaners. The attempt was unsuccessful when the Songs called the police to intervene. The Songs subsequently obtained legal counsel, who sent a letter to Ms. Chung, dated May 9, 2014, asserting that the contract had never become effective because a written lease had never been provided.

On June 13, 2014, the Songs filed a complaint in the Blount County Circuit Court against Ms. Chung. The Songs later amended this complaint to include Ms. Chung's two brothers, Myung Jong Lee and Cheong Jong Lee, as defendants. The complaint was ultimately dismissed without prejudice due to issues with service of process on the defendants.[4]

On June 14, 2017, the Songs filed the instant complaint in the Blount County Chancery Court ("trial court"), naming as defendants Ms. Chung; Myung Jong Lee; Cheong Jong Lee (then deceased); Sookhee Lee (Cheong Jong Lee's surviving spouse); and "all known and unknown children, heirs, representatives, and assigns of Cheong Jong Lee." The Songs alleged in their complaint that the Contract of Sale was not a valid

---

[3] The three letters were written in Korean and presented as exhibits during trial. David Song testified to the content of the letters through direct testimony and with the aid of a court-appointed interpreter. We note that the letters as translated do not specify any legal conclusions with respect to the contract. According to the translation offered during trial, the first letter "requested [Ms. Chung to] please give [the Songs] the written lease until December 15, 2015, otherwise . . . if [Ms. Chung doesn't] get the written lease from the landlord [for the Songs], then please . . . refund the money, and then . . . take [her] stuff back." The subsequent letters substantively reflect this request to return the parties to their respective statuses prior to executing the contract.

[4] Although the existence of the original circuit court complaint and ultimate dismissal without prejudice is undisputed, we note that the record before us does not contain the circuit court pleadings or dismissal order.

instrument because the condition of a written lease in "Paragraph 3" had not been satisfied. In the complaint, the Songs requested declaratory judgment that the contract, promissory note, and security agreement were invalid, requesting in the alternative that the trial court award damages for a breach of contract and a breach of warranty. The Songs additionally asserted claims of unjust enrichment, conversion, fraud, negligent misrepresentation, and violation of the Tennessee Consumer Protection Act specifically against Ms. Chung.

Ms. Chung, acting *pro se*, filed an answer to the complaint on July 12, 2017, denying all substantive allegations and alleging that the Songs had waived the condition of a written lease in the Contract of Sale. Ms. Chung also asserted in her answer that she was the only proper party defendant to the complaint because the other named defendants were not related to the sale in controversy. In their complaint, the Songs named defendants in addition to Ms. Chung under the theory that "the three named Defendants to this action operated the Unique Cleaners business as a general partnership prior to the purported sale of the business . . . ." Ms. Chung denied this characterization of the business in her answer, however, and we discern nothing in the record to indicate the existence of a general partnership among the defendants.

Ms. Chung's answer concluded with eight numbered paragraphs requesting, as pertinent on appeal, a judgment declaring that the Contract of Sale was a valid instrument; enforcement of the promissory note; enforcement of the vendor's lien on the equipment; an order restraining the Songs from "selling, removing, damaging or otherwise rendering less valuable" the equipment at Unique Cleaners with a perfected lien; and recovery of any costs and attorney's fees. The trial court treated this part of the answer as a concomitantly filed counter-complaint. *See* Tenn. R. Civ. P. 8.05(1), 8.06.

Although service of process was perfected on Myung Jong Lee and Sookhee Lee, neither filed an answer to the complaint. Following a hearing, the trial court granted the Songs' motion for default judgment against Myung Jong Lee, Cheong Jong Lee (deceased), and Sookhee Lee in an order entered October 3, 2017. Sookhee Lee filed an "Answer to Order Granting Default Judgment" on October 6, 2017, asserting that she and her late husband were not proper parties to the lawsuit and attaching a letter she had written to the trial court clerk upon purportedly returning from a trip overseas to find the Songs' motion for default judgment in her mail.

The trial court conducted a bench trial on November 8, 2017, dismissing the parties' pending cross-motions for summary judgment before hearing testimony presented by David Song through a court-appointed interpreter, Christine Song, Ms. Chung, and Ms. Morrisey. On December 19, 2017, the trial court entered an order with incorporated memorandum opinion dismissing the Songs' complaint in its entirety and

granting part of the relief requested in Ms. Chung's counter-complaint. With respect to the Songs' claim that the contract was void, the court determined that the parties' conduct amounted to a waiver of the specific requirement contained in Paragraph 3 of the Contract of Sale. Addressing the Songs' alternative claims, the trial court determined that the "evidence simply does not sustain the claim for breach of contract or misrepresentation with respect to the age of the equipment."

Turning to the counter-complaint, the trial court awarded to Ms. Chung the amount of $40,330.23 as the balance of principal due on the promissory note, plus two percent interest per annum for four years.[5] The court also awarded to Ms. Chung immediate possession of the business equipment, fixtures, accounts receivable, supplies, and inventory upon which she had a lien, directing that she would be allowed to sell those items for use of the proceeds as credit against the money judgment. The court granted Ms. Chung's request for an order restraining the Songs from selling, removing, damaging, or otherwise rendering less valuable the secured items. However, the court denied Ms. Chung's request for costs and attorney's fees, noting that although Ms. Chung had claimed these expenses in her complaint, she had failed to include evidence of any legal expenses during trial. The Songs timely appealed.

## II. Issues Presented

The Songs present three issues on appeal, which we have restated as follows:

1.  Whether the trial court erred by dismissing the Songs' complaint in its entirety and awarding a judgment in favor of Ms. Chung on her counter-complaint.

2.  Whether the Contract of Sale was void due to the failure of a condition subsequent.

3.  Whether the trial court erred by determining that the Songs waived the condition of a written lease in Paragraph 3 of the contract of Sale when they executed the agreement on December 21, 2012.

Ms. Chung's statement of the issues consists of six unnumbered paragraphs, many of which contain factual points or arguments related to the issues raised by the Songs.

---

[5] As to the amount of principal due pursuant to the promissory note, the trial court found in its memorandum opinion incorporated into the judgment, after "run[ning] an amortization schedule," that "given credit for the nine monthly payments made, the remaining balance on the promissory note of principal as of October of 2013 would have been forty thousand three thirty twenty-three." On appeal, the parties have not disputed the amount of remaining principal as calculated by the trial court.

Ms. Chung has raised the following additional issue, which we have restated slightly as follows:

4. Whether the trial court erred by denying Ms. Chung an award of costs and attorney's fees pursuant to the terms of the promissory note.

### III. Standard of Review

Our review of the trial court's judgment following a non-jury trial is *de novo* upon the record with a presumption of correctness as to the trial court's findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 204 (Tenn. 2012). "In order for the evidence to preponderate against the trial court's findings of fact, the evidence must support another finding of fact with greater convincing effect." *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006) (citing *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001)).

We review the trial court's interpretation of a written agreement *de novo* with no presumption of correctness. *See Ray Bell Constr. Co., Inc. v. State, Tenn. Dep't of Transp.*, 356 S.W.3d 384, 386 (Tenn. 2011); *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009). As this Court has previously explained:

> In resolving a dispute concerning contract interpretation, our task is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contract language. *Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.*, 78 S.W.3d 885, 889-90 (Tenn. 2002) (citing *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999)). A determination of the intention of the parties "is generally treated as a question of law because the words of the contract are definite and undisputed, and in deciding the legal effect of the words, there is no genuine factual issue left for a jury to decide." *Planters Gin Co.*, 78 S.W.3d at 890 (citing 5 Joseph M. Perillo, *Corbin on Contracts*, § 24.30 (rev. ed. 1998); *Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001)). The central tenet of contract construction is that the intent of the contracting parties at the time of executing the agreement should govern. *Planters Gin Co.*, 78 S.W.3d at 890. The parties' intent is presumed to be that specifically expressed in the body of the contract. "In other words, the object to be attained in construing a contract is to ascertain the meaning and intent of the parties as expressed in the language used and

to give effect to such intent if it does not conflict with any rule of law, good morals, or public policy." *Id.* (quoting 17 Am. Jur. 2d, Contracts, § 245).

*Kafozi v. Windward Cove, LLC*, 184 S.W.3d 693, 698 (Tenn. Ct. App. 2005), *perm. app. denied* (Tenn. Jan. 30, 2006).

In reviewing pleadings, we "must give effect to the substance, rather than the form or terminology of a pleading." *Stewart v. Schofield*, 368 S.W.3d 457, 463 (Tenn. 2012) (citing *Abshure v. Methodist Healthcare-Memphis Hosp.*, 325 S.W.3d 98, 104 (Tenn. 2010)). We note also that pleadings "prepared by pro se litigants untrained in the law should be measured by less stringent standards than those applied to pleadings prepared by lawyers." *Stewart*, 368 S.W.3d at 462 (citing *Carter v. Bell*, 279 S.W.3d 560, 568 (Tenn. 2009); *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003); *Young v. Barrow*, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003)). Parties proceeding without benefit of counsel are "entitled to fair and equal treatment by the courts," but we "must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe." *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003).

## IV. Effect of Default Judgment

As a threshold matter, we address *sua sponte* the effect of the default judgment entered against Myung Jong Lee, Cheong Jong Lee (deceased), and Sookhee Lee in order to determine whether it affects the finality of the judgment from which the Songs appeal. *See Bayberry Assocs. v. Jones*, 783 S.W.2d 553, 559 (Tenn. 1990) ("Unless an appeal from an interlocutory order is provided by the rules or by statute, appellate courts have jurisdiction over final judgments only."). In their complaint, the Songs specified as to whether each claim applied to all defendants or solely to Ms. Chung. In its December 2017 order and memorandum opinion, the trial court dismissed claims against Ms. Chung but did not expressly dispose of the claims against the other defendants. Additionally, the trial court did not certify the December 2017 order as a final judgment pursuant to Tennessee Rule of Civil Procedure 54.02. Upon a thorough examination of the record and applicable law, however, we determine that the trial court's dismissal of the Songs' complaint was inclusive of the outstanding claims against Myung Jong Lee, Cheong Jong Lee (deceased), and Sookhee Lee. The December 2017 order therefore constitutes a final judgment over which this Court has subject matter jurisdiction.

As this Court has previously explained, "the entry of a default judgment has the effect of an answer admitting the well-pleaded material allegations of fact contained in the adversary's pleadings and fair inferences therefrom." *Lawson v. Stewart*, No. M2016-02213-COA-R3-CV, 2017 WL 4331043, at *3 (Tenn. Ct. App. Sep. 28, 2017)

10

(quoting *H.G. Hill Realty Co. v. Re/Max Carriage House, Inc.*, 428 S.W.3d 23, 30 (Tenn. Ct. App. 2013)). However, "[a] default judgment 'is in no way an admission of legal conclusions or matters of law[.]'" *Lawson*, 2017 WL 4331043, at *3 (quoting *Brashears v. Hartsook*, 450 S.W.2d 7, 41 (Tenn. 1969)). "Thus, a default judgment establishes the non-defaulting party's right to maintain the action and recover some damages, but the amount of damages remains an open question to be determined by proof." *Husk v. Thompson*, No. M2016-01481-COA-R3-CV, 2017 WL 3432686, at *4 (Tenn. Ct. App. Aug. 10, 2017). Prior to a determination of damages, therefore, an entry of default judgment against a defendant in a contract case such as this is interlocutory and not a final disposition. *See Sherick v. Jones*, No. 87-351-II, 1988 WL 55028, at *7 (Tenn. Ct. App. June 3, 1988) (citing *Grace v. Curley*, 3 Tenn. App. 1, 3-4 (1926)).

The claims specifically raised against Myung Jong Lee, Cheong Jong Lee, and Sookhee Lee in the Songs' complaint were for breach of contract and breach of warranty, both arising from allegations that the equipment transferred in the sale of Unique Cleaners was older than represented or inoperable altogether. The Songs also included Myung Jong Lee, Cheong Jong Lee, and Sookhee Lee in their request for declaratory judgment that the Contract of Sale and its related instruments were void. None of the Songs' claims were raised solely against Myung Jong Lee, Cheong Jong Lee, and Sookhee Lee without including Ms. Chung. Moreover, the Songs did not raise an issue in the final hearing before the trial court concerning damages to be awarded on the default judgment.

Dismissing the complaint in its December 2017 order, the trial court determined that the Contract of Sale and all related instruments were valid and enforceable, including the "Conditions of Assets" clause relating to the parties' awareness of the condition of the equipment and business assets. The trial court further stated that the "evidence simply does not sustain the claim for breach of contract or misrepresentation with respect to the age of the equipment." Inasmuch as the allegations specific to Myung Jong Lee, Cheong Jong Lee, and Sookhee Lee involved a breach of contract claim and a breach of warranty claim arising out of misrepresentation of the subject equipment, we determine that the trial court disposed of any damages that could have been awarded as a result of the default judgment by dismissing the claims in their entirety. The trial court's order therefore disposed of all claims against all parties. Accordingly, the December 2017 order is a final order over which this Court has subject matter jurisdiction.

V.  Validity of the Contract of Sale

The Songs contend that the Contract of Sale, the security agreement, and the promissory note are invalid instruments because Paragraph 3 of the Contract of Sale unambiguously conditions the sale on the Songs' ability to obtain a written lease from

Ms. Morrisey.  The Songs argue that Paragraph 3 constitutes a "condition subsequent" of the contract, "which the parties contemplated would survive the execution of the Contract of Sale as well as the partial performance that occurred on December 21, 2012."  In contrast, the trial court stated in its December 2017 order that the condition was waived when the parties executed the Contract of Sale on December 21, 2012, which is when the transaction concluded.  The court specifically found:  "Money changed hands, possession changed hands, the right to operate the business and the actual operation of the business changed hands."  Upon a thorough examination of the record and applicable law, we determine that the parties waived the condition in Paragraph 3 and that the Contract of Sale was a valid and enforceable instrument as a result.

"A conditional contract is a contract whose very existence and performance depends upon the happening of some contingency expressly stated therein . . . ."  *Real Estate Mgmt. v. Giles*, 293 S.W.2d 596, 599 (Tenn. Ct. App. 1956).  With respect to a transactional contract such as the one at issue in this case, a condition <u>precedent</u> affects whether a duty to perform arises, whereas a condition <u>subsequent</u> affects whether an established duty to perform may be extinguished.  *See Harvey v. Turner*, No. M2014-00368-COA-R3-CV, 2015 WL 1451702, at *5 (Tenn. Ct. App. Mar. 26, 2015), *perm. app. denied* (Tenn. Aug. 14, 2015) ("A condition precedent in a contract . . . must be performed or happen before a duty of immediate performance arises on the promise which the condition qualifies." (quoting *McGhee v. Shelby Cty. Gov't*, No. W2012-00185-COA-R3-CV, 2012 WL 2087188, at *8 (Tenn. Ct. App. June 11, 2012))); Restatement (Second) of Contracts § 224, cmt. e (1981) ("Parties sometimes provide that the occurrence of an event, such as the failure of one of them to commence an action within a prescribed time, will extinguish a duty after performance has become due . . . .  Such an event has often been called a 'condition subsequent.'").  This Court has noted that "[w]hether a contractual provision is or is not a condition precedent depends upon the parties' intention which should be gathered from the language they employ and in light of all the circumstances surrounding the contract's execution."  *Harlan v. Hardaway*, 796 S.W.2d 953, 957-58 (Tenn. Ct. App. 1990), *perm. app. denied* (Tenn. Sep. 24, 1990).

Despite the presence of conditional terms in a contract, parties to the contract may waive the specified conditions under certain circumstances.  As this Court has previously explained:

> It is true that parties to a contract are generally free to impose whatever conditions they wish on their contractual undertakings and that if such conditions are not literally met or exactly fulfilled, no liability can arise on the promise qualified by the conditions.  13 SAMUEL WILLISTON & RICHARD A. LORD, A TREATISE ON THE LAW OF CONTRACTS §§ 38:2, at

12

370-71, 38:6, at 384-85 (4th ed. 2000) [hereinafter WILLISTON ON CONTRACTS]. However, it is also "well established that a party to a contract may waive a condition precedent to his or her own performance of a contractual duty, even in the absence of a provision in the contract expressly authorizing a waiver." 13 WILLISTON ON CONTRACTS § 39:17, at 568-69; *see American Cent. Ins. Co. v. McCrea, Maury & Co.*, 76 Tenn. 513, 525, 1881 WL 4452, at \*6 (1881) ("it is in the nature of a condition precedent to be subject to waiver"). This is so even where, as here, the contract contains a clause stating that the entire agreement will be null and void if the condition is not met. 13 WILLISTON ON CONTRACTS § 39:17, at 568-69. If, in spite the failure of the condition precedent, the party in whose favor it was drafted performs or receives performance under the contract, the condition precedent is waived. 13 WILLISTON ON CONTRACTS § 39:17, at 569; 8 CATHERINE M.A. MCCAULIFF, CORBIN ON CONTRACTS § 40.4, at 533 (Joseph M. Perillo ed., rev. ed. 1999) . . . . The contract will be enforced despite the nonoccurrence of the condition, and the party that waived the condition is estopped from asserting the failure of the condition as a defense in a suit to enforce the agreement. 13 WILLISTON ON CONTRACTS § 39:17, at 569-70.

*Tenn. Div. of United Daughters of the Confederacy v. Vanderbilt Univ.*, 174 S.W.3d 98, 115 (Tenn. Ct. App. 2005).

The specific portion of Paragraph 3 of the contract at issue provides:

The conclusion of this transaction is contingent upon a lease and/or sub-lease from the landlord and/or Seller that is acceptable to both Seller and Buyer and the parties further acknowledge and agree that this Contract of Sale shall not become effective until and unless a lease and/or sub-lease is signed by both Seller and Buyer, but that upon such signing, this Agreement shall immediately be in full force and effect.

The Songs contend that the condition was not waived by the execution of the Contract of Sale because it was intended as a condition that would take effect subsequent to the contract's execution and partial performance. The Songs point to the language comprising the "conclusion" of the transaction, rather than the "beginning" or "inception," as evidence that the parties intended for the contingency to be in place until it was either satisfied or both parties completed their performance under the contract. We do not find this semantic distinction controlling on the issue, however, and we further determine that Paragraph 3 created a condition precedent as opposed to a condition subsequent.

13

First, a "conclusion" does not necessarily require a completion of all residual duties of performance, and we recognize that a transaction may "conclude" while one party still remains liable for payment. *See Conclusion*, BLACK'S LAW DICTIONARY 308 (8th ed. 2004) (defining "conclusion" in relevant part as "[t]he closing, settling, or final arranging of a treaty, contract, deal, etc."). The word, "conclusion," as used in the instant provision may therefore be ambiguous as to whether it refers to the completion of performance under the contract or the closing of the deal. The rest of the sentence in Paragraph 3, however, resolves this potential ambiguity by stating that the contract "shall not <u>become</u> effective <u>until and unless</u> such a lease and/or sub-lease is signed by both Seller and Buyer" (emphasis added). The use of the word, "conclusion," is not sufficient on its own to indicate that the parties intended the contingency to rest on a completion of performance when the same sentence goes on to state instead that the contingency relates to the beginning of the parties' performance. *See Vanbebber v. Roach*, 252 S.W.3d 279, 284 (Tenn. Ct. App. 2007), *perm. app. denied* (Tenn. Mar. 3, 2008) ("The language in dispute must be examined in the context of the entire agreement. . . . 'A strained construction may not be placed on the language used to find ambiguity where none exists.'" (quoting *Farmers-Peoples Bank v. Clemmer*, 519 S.W.2d 801, 805 (Tenn. 1975)) (additional internal citation omitted)); *Kafozi*, 184 S.W.3d at 698 ("In resolving a dispute concerning contract interpretation, our task is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contract language.").

Second, the Contract of Sale involves a single transaction with few duties of performance imposed on either party apart from a transfer of assets. Pertinent to this appeal, Ms. Chung fully performed under the Contract of Sale by transferring Unique Cleaners to the Songs and completing a thirty-day training period and one-year availability for telephone consultation as required by the contract. Likewise, the Songs fully performed under the contract by tendering $50,000.00 to Ms. Chung and assuming liability for the remaining $50,000.00 through the promissory note. We do not discern any duty that the contract placed on Ms. Chung to obtain a lease for the Songs, nor do we discern any pertinent duties of performance that may have been excused due to the Songs' failure to obtain a written lease.

We determine that the language of the Contract of Sale and the immediate and transactional nature of the performance indicate that the condition of a written lease was intended to precede the execution of the contract, rather than to subsequently excuse the parties' performance. By its plain language, the contract states that it shall not become effective until a written lease is signed, not that it will <u>cease</u> being effective if a certain condition is not met. In spite of the express condition that the contract would not become effective until and unless the Songs obtained a written lease, the parties executed the contract and placed it into effect without a written lease in place. We note that neither

party disputes that the Contract of Sale was initially put into effect and binding on the parties upon its execution. The Songs do not argue that the Contract of Sale was never effective but that "the parties intended for their obligations to perform under the Contract of Sale to become binding initially, subject to being reversed at a later time if the [Songs] were unable to obtain a written lease for the business."

The Songs contend that "[i]f the parties really intended for the condition to be satisfied . . . or fail . . . <u>before</u> the execution of the Contract of Sale on December 21, 2012, then the language of Paragraph 3 would be rendered completely meaningless at the <u>exact instant the contract became effective</u> . . . ." Although the Songs argue that treating the provision as a condition precedent in this way produces an absurd result that fails to properly give effect to all the provisions of their contract, we determine that the parties' treatment of the provision instead falls under the well-established principles of waiver.

As this Court has previously elucidated:

> Waiver occurs where a party "by express declaration; or by acts and declarations manifesting an intent and purpose not to claim the supposed advantage; or by course of acts and conduct, or by so neglecting and failing to act, as to induce a belief that it was [the party's] intention and purpose to waive." *94th Aero Squadron of Memphis, Inc. v. Memphis-Shelby Cnty. Airport*, 169 S.W.3d 627, 636 (Tenn. Ct. App. 2004) (internal quotation marks omitted) (alteration in original) (quoting *Jenkins Subway, Inc. v. Jones*, 990 S.W.2d 713, 722 (Tenn. Ct. App. 1998)). "[W]aiver is proven by a clear, unequivocal and decisive act of the party, showing a purpose to forgo the right or benefit which is waived." *GuestHouse Intern., LLC v. Shoney's N. Am. Corp.*, 330 S.W.3d 166, 202 (Tenn. Ct. App. 2010) (internal quotation marks omitted) (quoting *E & A Ne. Ltd. P'ship v. Music City Record Distribs, Inc.*, No. M2005-01207-COA-R3-CV, 2007 WL 858779, at *7 (Tenn. Ct. App. Mar. 21, 2007)).

*Crye-Leike, Inc. v. Carver*, 415 S.W.3d 808, 821 (Tenn. Ct. App. 2011), *perm. app. denied* (Tenn. Sep. 26, 2011); *cf. White v. Empire Express, Inc.*, 395 S.W.3d 696, 715-16 (Tenn. Ct. App. 2012), *perm. app. denied* (Tenn. Feb. 19, 2013) ("A party 'waive[s] its right to assert first material breach as a bar to recovery if it accepts the benefits of the contract with knowledge of the breach.'" (quoting *Madden Phillips Constr., Inc. v. GGAT Dev. Corp.*, 315 S.W.3d 800, 813 (Tenn. Ct. App. 2009))).

In this case, the trial court stated in its December 2017 order and memorandum opinion that "the parties' actions at the time of the closing [and] the parties' actions after the closing indicated . . . that – in spite of the language of paragraph 3 of the contract . . .

they meant this to be a closing with possession" on December 21, 2012. We agree. As the trial court noted, the Songs were aware of the nonexistence of a permanent lease "long before the closing [on] December 21, 2012." Despite their knowledge that no current written lease existed on the building space and their knowledge of the conditional provision in Paragraph 3, the Songs entered into the Contract of Sale with Ms. Chung and began operating Unique Cleaners and making payments on the promissory note as if the contract were in full force and effect. Additionally, the Songs did not cease the monthly payments until approximately nine months had passed from the first payment due date in February 2013. The record reflects that the earliest written communication David Song sent to Ms. Chung potentially claiming that the contract was ineffective and calling for a rescission was in November 2013, almost one year after the Songs had begun operating Unique Cleaners. Furthermore, David Song testified during trial that when Ms. Chung attempted to physically retake possession of Unique Cleaners in early 2014, the Songs refused to turn over possession and contacted the police to intervene in Ms. Chung's attempt.

The Songs' conduct at the time of the contract's execution and in the subsequent years prior to trial was inconsistent with their argument that they did not believe the contract to be effective due to the nonoccurrence of a condition. Instead, the Songs' actions manifested a purpose to continue operating Unique Cleaners and receiving the benefit of the business as if the transaction had concluded and the condition in Paragraph 3 were of no effect. We therefore determine that these actions amount to a waiver of the condition precedent requiring a written lease. *See Crye-Leike, Inc.*, 415 S.W.3d at 821.

Finally, we are mindful of the trial court's alternative rationale for its decision with regard to the Contract of Sale. As the trial court noted in its December 2017 order and memorandum opinion, at the time of trial, the Songs had been in continual possession and operation of Unique Cleaners since the execution of the Contract of Sale on December 21, 2012. Addressing the impracticability of returning the parties to the position they were in prior to the sale, the court went on to explain:

> [T]he possession of the business, the possession of the equipment, the use of the equipment, that's worth something. . . . even if you're not able, ultimately, to make it a profitable business.
>
> For example, if you wanted to have a go at a business and you went out and you rented equipment it would cost you something[.] . . . And there's the depreciation, wear and tear, et cetera of the equipment over a period of five years, which [there is] no way from the record here to address that. . . . if Ms. Chung had to pay back the down payment plus the monthly payments, okay, what about depreciation, wear and tear, what about the

16

value of the use and possession of the equipment for five years? How do we address that? Well, we couldn't . . . on the record here.

It is a fundamental maxim in the chancery court that he who seeks equity must do equity. *See* WILLIAM H. INMAN, GIBSON'S SUITS IN CHANCERY § 16 (7th ed. 1988). "Where the plaintiff obtains the rescission of a contract, or the cancellation of an instrument, he must make the defendant whole." *Id.*; *see also Lindsey-Davis Co. v. Siskin*, 358 S.W.2d 331, 333 (Tenn. 1962) ("[I]t is a fundamental rule in equity a contract will not be rescinded if the parties cannot be placed in status quo."); *Dodson v. Shrader*, No. 89-128-II, 1989 WL 125058, at *18 (Tenn. Ct. App. Oct. 20, 1989), *rev'd on other grounds*, 824 S.W.2d 545 (Tenn. 1992) ("[T]his Court has held that the party seeking to rescind the contract must place the other party, as nearly as possible, in the condition the other party was in prior to the contract."). "If the parties cannot be put in status quo, or if, due to the passage of time or other reasons, equity cannot be done, there is no ground for rescission." *Lamons v. Chamberlain*, 909 S.W.2d 795, 801 (Tenn. Ct. App. 1993), *perm. app. denied* (Tenn. Oct. 4, 1993); *see Stonecipher v. Estate of Gray*, No. M1998-00980-COA-R3-CV, 2001 WL 468673, at *5 (Tenn. Ct. App. May 4, 2001).

In the case at bar, the trial court made a determination that the Songs' requested rescission of the contract, effecting a return of the $50,000.00 down payment and the money paid on the promissory note in exchange for possession of Unique Cleaners, would not place the parties in their status quo positions prior to entering into the contract. Furthermore, the trial court determined that it could not, based on the evidence presented, adequately address the value of Unique Cleaners that was lost due to the Songs' possession and use of the business's equipment over the course of five years from the point of sale in December 2012 to the time of trial in November 2017. We determine that the trial court's reasoning in this instance is consistent with equitable principles that a cancellation or rescission of a contract should be denied if the parties cannot be placed as nearly as possible in the respective positions they were in prior to entering into the contract. We therefore conclude that the trial court did not err by dismissing the Songs' complaint requesting a judgment declaring the Contract of Sale invalid or by awarding to Ms. Chung a judgment enforcing the terms of the contract. Accordingly, we affirm the trial court's ruling with respect to these issues.

## VI. Ms. Chung's Attorney's Fees and Costs

Ms. Chung contends that the trial court erred by declining to award her attorney's fees and costs incurred as a result of her collection attempts on the promissory note.[6] The

---

[6] Although Ms. Chung represented herself during trial and before this Court on appeal, the deposition of Mr. Kull, presented as an exhibit during trial, indicates that Ms. Chung was represented by attorney

17

second paragraph of the promissory note provides in relevant part that "[i]f the Note is in default and is placed in the hands of an attorney at law for collection, the undersigned [the Songs] agrees to pay all costs of collection, including a reasonable attorneys fee." The trial court declined to award any costs or attorney's fees to Ms. Chung in its December 2017 order. Although finding that an award of attorney's fees may have been possible under the provision, the court further found that "[t]here is no evidence in the record here in the way of testimony what Ms. Chung's attorneys' fees that she has paid, how much they are."

Upon a thorough examination of the record, we can likewise find no evidence presented during trial to indicate the amount of costs or attorney's fees that Ms. Chung may have incurred in attempting to collect the balance of the promissory note. We therefore affirm the trial court's denial of attorney's fees. Insofar as Ms. Chung appears to request attorney's fees incurred on appeal in the argument section of her brief and not in the statement of the issues, we decline to consider any potential attorney's fees incurred as part of the appellate process. *See* Tenn. R. App. P. 13(b) ("Review generally will extend only to those issues presented for review."); *Owen v. Long Tire, LLC*, No. W2011-01227-COA-R3-CV, 2011 WL 6777014, at *4 (Tenn. Ct. App. Dec. 22, 2011) ("The requirement of a statement of the issues raised on appeal is no mere technicality.").

## VII. Conclusion

For the reasons stated above, we affirm the trial court's judgment in its entirety. We remand this matter to the trial court, pursuant to applicable law, for enforcement of the trial court's judgment and collection of costs assessed below. Costs on appeal are taxed to the appellants, Christine Song, David Song, and Michelle Song.

_____
THOMAS R. FRIERSON, II, JUDGE

Melanie Davis at the time of the deposition in November 2016, several months prior to the commencement of the instant action in the trial court.

18